**Dillard KILGORE, Appellant,**

**v.**

**GOOSE CREEK COAL COMPANY, Inc., et al., Appellees.**

Court of Appeals of Kentucky.

June 25, 1965.

Ronald W. May, Combs & May, Pikeville, for appellant.

Fred G. Francis, Howard, Francis & Howard, Prestonsburg, Stuart Alexander, Louisville, for appellees.

PALMORE, Judge.

Dillard Kilgore appeals from a judgment sustaining an award of the Workmen's Compensation Board based on a finding that his permanent partial disability was only 25%, as against his claim of 100%, to the body as a whole.

Adopting the report of Dr. T. Rothrock Miller, to whom it had referred him for examination and report pursuant to KRS 342.121, the board determined that as the result of his compensable injury Kilgore had been totally disabled from August 9, 1962, until February 4, 1963, "and thereafter sustained permanent partial disability of 15 percent to his body as a whole from the effects of said injury and an additional 10

percent to his body as a whole as the result of the arousal into disabling reality, by said injury, of a dormant, non-disabling and pre-existing disease condition."

The board entertained an application for review of Dr. Rothrock's report and permitted claimant to take his deposition, following which the objection to the report was overruled. The gist of the objection, and the only contention made on this appeal, is that the doctor's estimates of disability were based on purely functional impairment rather than the claimant's capacity to perform the work demanded by his occupation. See Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905 (1964), and Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, 731 (1963).

It is not entirely clear to us from either the report or the deposition of Dr. Miller whether his estimated percentages of disability were based on Kilgore's capacity to do the work of a coal miner (his regular occupation) or merely on his general physical impairment. The report itself provides no cue. Salient portions of the deposition are as follows:

Q— "Doctor, I note in your report, particularly in Paragraph (d), page 2, that your estimate of total percentage of permanent disability is 25 per cent to the body as a whole. Now is that a functional impairment or rating of disability based upon rotation of motion, bending and stooping?"

A— "Yes, sir, I think so."

Q— "Whether or not this man could return to his former work as a coal miner, then, would depend upon many other factors such as work environment like height of the coal, the amount of weights he would have to lift, and factors such as that? Is that not correct?"

A— "Yes, sir."

\*　　\*　　\*　　\*　　\*　　\*

Q– "And you apportioned 10 per cent of his disability to that pre-existing condition?"

A– "Yes, sir."

Q– "And then you felt that the injury of August 9, 1962 caused a disability of some 15 per cent to the body as a whole?"

A– "Yes, sir."

Q– "And that was to do the work which he was doing as a miner?"

A– "Yes, sir."

Q– "In other words, he is impaired to the extent of 25 per cent to do the type of labor he was doing at the time he was injured, in your best medical judgment?"

A– "From the purely physical point of view, yes."

\* \* \* \* \* \*

Q– "Doctor, in answering Mr. Francis' statements did you have the information available as to what height of coal this man was working in, what weights he was required to lift, and the general duties of each workday required of him?"

A– "Specifically, no, sir. I am more or less familiar with the general duties of a coal miner."

Q– "Now the 10 per cent of disability attributed to the probably pre-existing defect, that is also a functional percentage of valuation,\* is it not?"

A– "Yes, sir."

■ Appellant's brief points out "that the sole function of a medical examiner is to evaluate impairment of bodily function and that it is a legal or administrative task to make an evaluation of occupational disability." That is true, and in a number of recent cases it has been necessary to reverse the board's judgments because of an apparent misconception in this respect. Cf.

Deby Coal Company v. Caldwell, supra. If the doctor is willing, pursuant to appropriate questioning, to estimate a man's percentage of incapacity as a coal miner, for example, that is well and good. Certainly it would be helpful. But in the last analysis it is not his decision to make; it is a nondelegable responsibility of the board alone. Whatever may be the degree of physical impairment established by the medical testimony, the board must make its own estimate, from the evidence as a whole, of whether and to what degree that impairment actually disables the claimant from performing the duties of his occupation. Percentage of physical limitation is a medical question; percentage of disability is not.

■ In this particular case there was testimony by one physician, who examined the claimant only once, in September of 1963, to the effect that he probably never will be able to resume the heavy lifting and bending required of a coal miner. On the other hand, two physicians who had theretofore examined and treated him testified that he was able to go back to work early in 1963. Dr. Miller's report and the board's ultimate findings are quite consistent with the conclusions of these two witnesses. Dr. Miller made the further comment, "It was also my impression that many of his complaints were neurotic in nature and I made no attempt to evaluate this aspect." However, there was no evidence to justify or require a finding of traumatic neurosis or psychosomatic illness resulting from the accident as in the recent case of Holland v. Childers Coal Company, Ky., 384 S.W.2d 293 (1964). Considering all of the evidence, it does not appear to us that the claimant's 25% physical impairment is necessarily translatable into a greater percentage of occupational disability. Hence the findings of the board, being supported by substantial evidence, cannot be held clearly erroneous.

The judgment is affirmed.

---

\* This may be a stenographic error in which "evaluation" was transcribed as "of valuation."