**ED HALL DRILLING CO., et al., Appellants.**

**v.**

**Johnnie PROFITT et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 14, 1966.

As Modified on Denial of Rehearing
Feb. 23, 1968.

J. W. Craft, Jr., (Craft & Haynes) Hazard, for appellants.

Martin Glazer, Frankfort, Paul Rehm, Versailles, for Special Fund.

Edward Jackson, Beattyville, Steve Robbins, Richmond, for appellees.

William A. Rice, Harlan, for amicus curiae.

PALMORE, Chief Justice.

Appellee, Johnnie Profitt, was injured in a fall from a mast while working as a tool dresser for the appellant Ed Hall Drilling Company. His application for workmen's compensation resulted in an award based on a finding of 20% permanent partial disability, half of which was attributed to a dormant non-disabling degenerative condition of the spine and the other half to the specific injury sustained in the accident. Profitt appealed, and upon a review of the record pursuant to KRS 342.285 the Lee Circuit Court adjudged him to be *100% permanently disabled solely as a result of the accident*. The employer appeals.

The claimant having had the burden of proof, the issue presented by his appeal from the action of the Workmen's Compensation Board was whether the evidence as a whole forces a factual conclusion different from and more favorable to him than the conclusion reached by the Board. Cf. Sullivan v. Foster & Creighton Company, Ky., 394 S.W.2d 917, 918 (1965). If not, the circuit court was not authorized to disturb the award. The answer requires an analysis of the salient testimony.

At the time of the accident, July 7, 1964, Profitt was 36 years of age and in apparent good health. He had worked regularly at strenuous labor and had not sustained any serious injury. There is no evidence that he had ever experienced symptoms of back trouble. The accident in question consisted of his falling several feet onto a steel beam. The immediate manifestations of injury were a fractured cheek bone and painful hip. An attending physician referred him to Dr. Andrew Moore at Lexington. Dr. Moore treated the facial injury and called in Dr. Kearns Thompson, an orthopedic surgeon, for further examination and treatment. Dr. Thompson had an AP X-ray of the pelvic region made, and it did not reveal "any abnormality of the pelvis or in the hip joints." The doctor's "tentative impression at the time * * was that he had sustained a sprain of the right hip." On July 13, 1964, Dr. Thompson noted that "his right hip discomfort has healed completely" and released him from orthopedic care. The patient was hospitalized for a total of nine days.

Dr. Thompson next saw and again X-rayed Profitt on September 8, 1964, after he had been back to see Dr. Moore about his face and had advised Dr. Moore that he was having back trouble. According to Dr. Thompson, "At this time he was complaining of pain in his low back. He noted the onset of this discomfort * * * when he got home and became active and particularly when he tried to cut some grass with a power mower * * * Patient pointing to the area of the lower lumbar

spine as the region of his discomfort. This area was entirely pain free when he was examined initially on July 9th in the hospital." The X-rays taken on September 8, 1964, disclosed "some narrowing or degenerative change to the lumbo-sacral junction, primarily on the right side."

As instructed, Profitt returned to Dr. Thompson on October 8, 1964, for re-examination. Meanwhile he had worked for one day; but this had produced soreness in his back and he had not worked thereafter. On this occasion the doctor advised him to go back to work "and not be so energetic when he initially started his employment." However, when Profitt made his next visit to Dr. Thompson, on November 5, 1964, he had not returned to work and the doctor again advised him to do so.

The next and last time Dr. Thompson saw the claimant was on January 4, 1965. Profitt reported that during December he had worked six days at mixing cement, but it had made his back sore. A clinical examination produced substantially normal findings, and the visit ended as follows:

"It was my feeling at this time that this patient manifested no residual impairment. Work was discussed with him. He was advised to return to work when such was available to him, and he was again released from orthopedic care, and it was my opinion that he related no residual manifestation as the result of his injury from an orthopedic standpoint. He had no complaint referable to his right hip at this time."

Dr. Thompson's direct testimony for the defense concluded with the following question and answer:

Q "Doctor, does the plaintiff have any permanent partial disability as the result of his injury in your opinion?"

A "From an orthopedic standpoint, no, sir."

All that was gleaned from Dr. Thompson by cross-examination was that the degen-erative condition in the claimant's lumbo-sacral region is permanent.

Profitt was seen and examined by Dr. Carl W. Noble, of Beattyville, on November 10, November 13, and November 27, 1964, and on February 22, 1965. X-rays of the spine indicated "chronic degenerative changes of the lumbo-sacral joint and a narrowing of the disc spaces at this level." It was Dr. Noble's opinion that although the degenerative changes had developed over a long period of time, the accident had caused the narrowing of the disc spaces and this narrowing "is the direct cause of his present symptamology." He testified that Profitt is totally and permanently disabled for heavy manual labor, a condition which, in the absence of X-rays taken or symptoms existing prior to the injury, must be attributed entirely to the injury of July 7, 1964.

Dr. J. C. Coldiron, of Manchester, examined Profitt on February 22, 1965. X-rays revealed the same conditions observed by Dr. Noble. Dr. Coldiron stated that Profitt "is unable to do any heavy work of any kind * * *. My opinion is that it is permanent." He declined, however, to give an opinion as to the relationship between the pre-existing degenerative changes and the accidental injury of July 7, 1964.

Dr. T. R. Miller, an orthopedic surgeon of Lexington, examined Profitt on March 16, 1965, at the instance of the employer. He took X-rays and a case history and had before him the X-rays taken for Dr. Thompson in July of 1964. He observed "unquestionable localized degenerative changes that may have been made symptomatic by such an accident," and except for which the claimant should have recovered completely. It was his opinion that the aggravation of these changes by the injury "might produce a present disability of perhaps ten per cent to the body as a whole." In describing the narrowing of the intervertebral space at L5–S1 he said that the joint is about 25% the width of the other interspaces.

Responsive to an appropriate motion under KRS 342.120 the Special Fund was made a party defendant and Dr. William C. Mitchell, an orthopedic surgeon of Louisville, was appointed to examine Profitt and render an evaluation in terms of present disability, if any, and causative factors. KRS 342.121. Specifically, Dr. Mitchell was asked to report the following: (1) Prior conditions capable of being aroused into disability by the injury of July 7, 1964, and the respective percentages of disability to Profitt's body as a whole resulting from each; (2) Total percentage of disability to the body as a whole existing immediately prior to July 7, 1964: (3) Percentage of disability to the body as a whole resulting from the injury of July 7, 1964, assuming the absence of any dormant pre-existing condition capable of contributing to it; (4) Total percentage of permanent or other disability presently existing; (5) Percentage of disability, if any, attributable to a combination of (2) and (3) in excess of disability calculated by simple addition of (2) and (3); and (6) Percentage of present disability, if any, resulting from arousal of previously dormant conditions by the accident of July 7, 1964.

The report was in the form of a letter dated May 13, 1965, setting forth the case history obtained from the claimant and describing the examination and its results. X-rays showed "an advanced degenerative and hypertrophic lumbosacral disc interspace with narrowing and mild degenerative changes." The report concluded with an opinion that "this man appeared to have a degenerative lumbosacral disc * * *. I think he would do well to have a firm back support and to work at a light type of work for a time and should do well * * *. As of this date and this evaluation, this man would appear to have a 15 to 20 per cent permanent partial impairment expressed in terms of his entire body, which by way of history can be properly relagated [sic] to the injury" of July 7, 1964.

Except for No. (4), total percentage of existing disability, Dr. Mitchell's report did not give the specific items of information requested by the Board. The employer filed exceptions "because the same is not responsive to the questions asked." The claimant moved for a review of the findings and for permission to take Dr. Mitchell's deposition for the following reason: "Dr. Mitchell stated that the plaintiff should have a firm back support and do light type of work which means that he can not do his former job and his ability to do any job is impaired. Dr. Mitchell's rating of 15 to 20 [per cent] permanent partial impairment to his entire body is a functional disability and not an occupational disability." The Board sustained the latter motion and passed the employer's exceptions to the merits.

When his deposition was taken Dr. Mitchell explained his use of the word "impairment" as follows:

"Well, this is to be distinguished from disability. Disability is to be considered in terms of the type work he had done. Impairment simply stated * * * implies that for ordinary living and expressing it in terms of his entire body he had a 15 to 20 per cent impairment. But it's to be distinguished from disability. He could be totally disabled as of this date for heavy work, but still in my opinion have a 15 to 20 per cent partial impairment."

Dr. Mitchell would not undertake to estimate the respective relationships of Profitt's injury and pre-existing condition to this present impairment. He declined also to translate his estimate of functional impairment in terms of occupational disability, quite properly pointing out that this is not a medical function, but the responsibility of the fact-finding board. See Kilgore v. Goose Creek Coal Company, Ky., 392 S.W. 2d 78, 80 (1965). He closed by remarking that although Profitt's physical impairment cannot be expected to change materially, he nevertheless has not attained his maximum expectable recovery from the standpoint of disability—that although he may now be totally disabled, that degree of disability is

temporary and might well decline "with further time and supportive care."

Since Dr. Mitchell did not answer all the queries put to him in the order of appointment the Board treated his report and testimony as inconclusive and not binding upon it, but still of probative value. It has been held, of course, that when the medical report made pursuant to KRS 342.121 is equivocal or inconclusive it is not binding. Cf. Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905, 907 (1964). But Dr. Mitchell's report was not entirely unresponsive or inconclusive. In some important respects it was clear and to the point. One of these was the estimate of 15% to 20% permanant partial impairment of Profitt's overall physical capacities. Another was the implicit conclusion, later confirmed in his testimony, that this impairment resulted from the aggravation of a pre-existent degenerative condition by the injury.

KRS 342.121(4) provides that "no such findings of the physician shall be subject to review unless *specific objections* thereto shall be filed with the board," etc. (Emphasis added.)

■■ The sole ground upon which the employer objected was that the report was not responsive to the questions asked. This did not, in our opinion, authorize the Board to review the substantive content of such finding or findings as were in fact responsive to the order requesting the report. As we construe it, the review provided by the statute is limited to the particular questions raised by the objections. In this instance the "specific objection" made by the employer was not that any portion or phase of the report was erroneous but, in effect, that it was irrelevant.

On the other hand, the claimant's motion, while directed specifically to the matter of whether the percentage of existing disability estimated by Dr. Mitchell was "functional" or "occupational," actually amounted to a request for clarification through the taking of a supplemental deposition rather than a "specific objection" which would have been required in order to authorize a review.

■■ It is our conclusion that regardless of the particulars in which Dr. Mitchell's report was unresponsive or may have been equivocal or inconclusive, the clear and unequivocal findings he did make, and which were in fact responsive to the Board's request, were never specifically objected to and were conclusive. Hence the estimates of disability given by the other medical witnesses should have been disregarded.

The comment in Kerns Bakery v. Hodges, Ky., 377 S.W.2d 88, 90 (1964), to the effect that if exceptions are filed the report is not controlling refers to specific objections. In that case the complaint filed in the circuit court alleged and the answer admitted that the bakery company had filed an application for review of the medical report "with specific objections thereto as provided by law." Again, in the recent case of Kentucky West Virginia Gas Company v. Ritchie, Ky., 402 S.W.2d 704, 705 (1966), holding a KRS 342.121 medical report not conclusive, the application for review contained more than two typewritten pages of specific objections alleging substantive deficencies and inaccuracies in the report. It specified, for example, that the case history received by the doctor was not accurate or complete; that the estimate of pre-existing disability was inconsistent with the evidence of claimant's having nevertheless actually engaged in his usual occupation; that there were certain inconsistencies in the report itself, and so on, for all of which reasons it contended that the doctor's estimates of disability, both pre-existing and ultimate, and whether temporary or permanent, were erroneous and should be reviewed.

■■■ We do not hold that exceptions need be so detailed as they were in the Kentucky West Virginia Gas Company case in order to qualify as "specific". It seems clear, however, that in its use of that word the statute reveals a legislative intent that something more than a perfunctory or gen-

eral objection be required in order to open up the report for review, and that only those aspects of the report that are specifically called into question may be reviewed. In this last respect, for example, an objection to the effect that Dr. Mitchell had failed to answer questions 1, 2, 3, 5 and 6 could not have constituted a "specific objection" against his answer to question 4.

■ Since the appointed physician would not estimate the relative contributions of the two causative factors, the Board's finding that they were equal is not an unreasonable conclusion. We are of the opinion, however, that the finding of occupational disability in a degree no greater than the percentage of functional impairment was unrealistic and clearly erroneous.

What Dr. Mitchell so aptly explained with regard to the distinction between "disability" and percentage of physical impairment has been recognized by this court on numerous occasions. See Congleton Brothers, Inc. v. Farmer, Ky., 399 S.W.2d 722, 723 (1966); Kilgore v. Goose Creek Coal Co., Ky., 392 S.W.2d 78, 80 (1965); Deby Coal Co. v. Caldwell, Ky., 383 S.W.2d 905, 906 (1964); Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, 731 (1963); E. & L. Transport Co. v. Hayes, Ky., 341 S.W.2d 240, 241, 84 A.L.R.2d 1102 (1960). In its opinion and award the Board noted that Dr. Mitchell had stated the degree of existing disability "to be a temporary total disability for heavy manual labor—as distinguished from a lesser (fifteen to twenty per cent) impairment for 'ordinary living.'" He did not say directly and categorically that Profitt is presently 100% disabled for strenuous labor, but we agree that this was the only fair inference to be drawn from his testimony. Recall, for example, his recommendation of a "firm back support" and "light type of work" for the time being. Therefore, is not this also an unequivocal finding of the appointed physician and thus binding? We think it is.

■ So, in terms of occupational disability plain logic leads to the conclusion that at the time the evidence in this case was closed the claimant was totally disabled from the performance of the only kind of work he was qualified to do. The prognosis was indefinite. Dr. Mitchell said that with time he might improve. Stated another way, in time he may be less than 100% disabled. It seems to us that this prospect, on the basis of the testimony, is not firm enough to warrant a lesser finding at this time, but is a contingency designed to be covered by the reopening provision of KRS 342.125(1).

In Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78 (1965), the medical examiner appointed pursuant to KRS 342.121 estimated a coal miner's functional disability at 25% but did not indicate that he was physically unable to resume his usual work. We held that a 25% functional impairment, without further elaboration, was not necessarily translatable into a 100% occupational disability. In fact, the examining physician testified that whether the man could return to his former work "would depend on many other factors." By contrast, the situation here is comparable with Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905, 907 (1964), in that the physician's statement to the effect that the claimant's physical condition limits him to a "light type of work" admits of no other reasonable conclusion than that he is, for the time being at least, totally disabled.

We find the judgment of the circuit court to be correct in determining permanent total disability as a matter of law but erroneous in attributing it wholly to the injury. The Board's finding that the injury and the pre-existing condition were equal factors should stand.

The judgment is affirmed in part and reversed in part with directions that the cause be remanded to the Workmen's Compensation Board for entry of an award in conformity with this opinion.

All concur.