John W. YOUNG, Commissioner of Labor of the Commonwealth of Kentucky and Custodian of the Special Fund, Appellant,

v.

CITY BUS COMPANY, Dewey Ray and Workmen's Compensation Board of Kentucky, Appellees.

Court of Appeals of Kentucky.

Oct. 3, 1969.

Rehearing Denied March 20, 1970.

Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, for appellant.

William J. Baird, Edward R. Hays, Baird & Hays, Kelsey E. Friend, Friend & Mullins, Pikeville, for appellees.

REED, Judge.

This is a workmen's compensation case in which the Special Fund appeals from a

judgment of the circuit court directing the compensation board to apportion to the Fund partial liability for the payment of an award.

Dewey Ray, an employee of City Bus Company, filed claim against his employer for workmen's compensation benefits by reason of two alleged work-connected injuries. He named the Special Fund as an additional party defendant in his application. Ray, a bus driver, asserted that he injured his back while storing his bus in a garage. The time of this injury was August 15, 1965. Ray, who returned to work for an appreciable period after the alleged 1965 injury, also asserted that he again injured his back on June 5, 1966, this time while lifting up on a door of the bus garage.

In the original proceedings before the Board, the medical evidence introduced by Ray and his employer consisted of the testimony of Dr. Russel Meyers, a neurosurgeon, and Dr. Kearns R. Thompson, an orthopedist. Dr. Meyers testified that Ray had received two compensable injuries. Dr. Meyers also stated that, in his opinion, Ray had an occupational disability of fifteen per cent caused by the injury of August 15, 1965, and that the injury of June 5, 1966 caused total occupational disability. Dr. Meyers found no dormant pre-existing *disease* that was aroused into disabling reality by either of the two alleged injuries. Dr. Thompson testified that Ray suffered total occupational disability resulting from the arousal into disabling reality of a "dormant degenerative wearing process in the spine, caused by work over a period of years"; the two injury episodes of August 15, 1965 and June 5, 1966 triggered the resulting disability, in Dr. Thompson's opinion. The Board, pursuant to KRS 342.121, appointed Dr. K. Armand Fischer to make the statutory report.

Dr. Fischer's report stated that Ray had "a severe degenerated disc at L–4 previous to August 15, 1965, but this was nondisabling." Dr. Fischer also reported that Ray sustained five per cent functional permanent partial disability to the body as a whole on account of the August 15, 1965 injury, and that, in addition, this injury aroused into disabling reality a dormant, pre-existing *condition* for an additional twenty per cent functional permanent partial disability to the body as a whole; Dr. Fischer found that the June 5, 1966 injury aroused into disabling reality a pre-existing, dormant *condition* for an additional twenty per cent functional permanent partial disability to the body as a whole, and that the June 5, 1966 injury also produced an additional twenty per cent functional permanent partial disability to the body as a whole. Dr. Fischer reported that as a result of the two injuries and the arousal of the dormant, nondisabling, pre-existing *condition*, Ray had a fifty per cent functional permanent partial disability to the body as a whole.

Ray filed exceptions to the report, and the employer also filed exceptions to it. The Special Fund did not file exceptions. Ray's exceptions, in substance, were that the functional disability ratings should be transposed by the Board to occupational disability. Ray also asserted in his exceptions that it was uncontradicted that he had no disability prior to the 1965 episode, and that he wanted the Board to consider all of the evidence both medical and lay so that the functional disability ratings could be properly transposed into a finding of total occupational disability. The employer's exceptions noted and relied on Dr. Fischer's finding that Ray had a pre-existing, severe, degenerative *condition* of the back which was capable of being aroused into disabling reality; the employer's principal objections to the report were directed to the contention that the alleged injury episodes were neither definite traumatic injuries nor sufficient to disable Ray to any extent. Thus, it is apparent that no exception was filed to the report questioning the finding of a pre-existing, nondisabling *condition* described as a "severe degenerated disc."

The Board found that Ray had a pre-existing, dormant, nondisabling *disease* prior

to August, 1965. It further found that he sustained only one injury—the episode of August 15, 1965. According to the Board, Ray did not experience a separate subsequent injury on June 5, 1966, but on the latter occasion merely aggravated his condition and became totally disabled. The Board adjudged Ray to be totally disabled, and attributed one half of his disability to the aggravated traumatic injury and one half to the arousal into disabling reality of a pre-existing, dormant, nondisabling *condition*. The employer was held to be liable for one half of the compensation payments awarded and the employer was adjudged entitled to reimbursement by the Special Fund for the other one half of the payments awarded.

Ray appealed this decision to the circuit court. The circuit court by judgment, which became final in the absence of appeal, remanded the case to the Board with directions to sustain Ray's contention that he had sustained two separate compensable injuries, and that he was totally disabled; the Board was further directed to consider and make a new proration of liability, if required, between the employer and the Special Fund based on the existence of two separate compensable injuries and their effect, if any, on any dormant, nondisabling, pre-existing *condition*.

On remand, the Board found that Ray was totally disabled as a result of the two compensable injury episodes, but that he did not have any pre-existing, dormant, nondisabling *disease* or *condition*. Accordingly, the Board discharged the Special Fund from any liability and adjudged the employer solely liable for the payment of the award. The employer appealed to the circuit court, where the disposition made by the Board was again reversed. The circuit court held that the testimony was uncontradicted that Ray did have a dormant, nondisabling, pre-existing *condition*. The Board was directed to so find and to apportion part of the liability for the payment of the award to the Special Fund.

The Special Fund appeals from this second judgment of the circuit court.

We have detailed the facts ad nauseam because they not only point up the confusion existing in the processing and adjudication of apportionment cases, but also because an understanding of the entire factual situation is necessary in considering the disposition of this appeal.

The Special Fund argues that the circuit court improperly substituted its judgment for that of the Board concerning the existence of a dormant, pre-existing condition in Ray's back. Both Ray and his employer insist that the report of the appointed physician was binding and that the Board improperly changed its findings after the initial remand of the case to it; thereby, not only disregarding the report of its appointed physician, but also violating the direction of the remanding order of the circuit court.

 The contention that the Board violated the remanding order is not tenable. The general rule appears to be that in the absence of a further appeal, the decision of the court on review of a compensation award or decision constitutes the law of the case as far as subsequent proceedings are concerned, and an issue determined on appeal is not to be reconsidered and redetermined by the compensation authorities. A compensation board may not disregard adjudications on review by changing findings of fact on the same evidence. 101 C.J.S. Workmen's Compensation § 790, pp. 40, 41.

 In the instant case, however, the order of remand specifically left open for the Board's determination the questions of the existence of a pre-existing, dormant, nondisabling condition, and whether either or both of the two injuries had aroused any such condition into disabling reality. Hence, we conclude that the Board was free to make a different finding on the same evidence so far as the first remand order, itself, was concerned.

It is also true, nevertheless, that the report of the Board-appointed physician found the existence of a pre-existing, dormant, nondisabling condition. No exception was filed with the Board putting in issue that finding, and no contention was presented to the circuit court that such finding was erroneous.

■ The statute (KRS 342.121(4)) reveals a legislative intent that something more than a perfunctory or general objection be required in order to open up the report for review, and that only those aspects of the report that are specifically called into question may be reviewed. Ed Hall Drilling Co. v. Proffit, Ky., 424 S.W. 2d 403.

■ Our opinions prior to the Proffit case, and many of those following it, merely state in most instances that the Board-appointed physician's report was not binding because exceptions had been filed to it. We hold that the rule stated in Proffit is sound and "the clear and unequivocal findings [in the report of a board-appointed physician] and which were in fact responsive to the Board's request, were never specifically objected to and were conclusive." Therefore, it follows in this case that Dr. Fischer's finding that Ray had a nondisabling, pre-existing, dormant *condition* is conclusive.

■ The Board, the parties before it in this case, the circuit court, and most of our opinions in apportionment cases, have treated the terms "condition" and "disease" as synonymous. As noted in Young v. Bear Branch Coal Company, Ky., 434 S.W.2d 656, this leads to confusion and error. The Bear Branch case holds that a pre-existing *disabling* condition may require apportionment regardless of its cause, but a pre-existing, *nondisabling* condition must be caused by a "disease" in order for apportionment to be possible. See also Young v. Ashland Oil and Refining Company, Ky., 442 S.W.2d 286.

■ Since the confusion present in this case is attributable, in part, to our own opinions, and considering that the Special Fund failed to raise the question before the Board or in the initial proceedings before the circuit court, we have concluded in this case to regard the finding of the Board-appointed physician as conclusive of the existence of a pre-existing, dormant, nondisabling disease as it was so treated by the parties and, therefore, affirm the action of the circuit court in directing apportionment in this case.

■ As to future cases, however, we are of the opinion that what facts are to be determined should be clearly understood. The Bear Branch case clearly pointed this out. If a worker is injured and was disabled prior to injury, the cause of the pre-existing disability is not significant so far as possible apportionment is concerned. If the worker is not disabled prior to injury, any dormant, nondisabling, pre-existing condition, which the injury may have aroused into disabling reality, must be caused by *disease* in order for apportionment to be possible. The evidence and the Board's questions to appointed physicians should be clearly directed to establish these facts.

In Green Valley Coal Company v. Carpenter, Ky., 397 S.W.2d 134, we held that a "degenerative process" in a disc was equatable with "disease"; yet, in Brown v. Gregory, Ky., 398 S.W.2d 710, in considering a degenerative disc, we said: "it is doubtful if a nondisabling degenerative condition which is due to normal aging processes is the type of condition intended to be covered by KRS 342.120." In Russel Construction Co. v. Workmen's Comp. Bd., Ky., 397 S.W.2d 357, we held that the presence of a nondisabling degenerative disc did not even require making the Special Fund a party to the proceeding much less permit apportionment.

■ We are of the opinion that a dormant, nondisabling, pre-existing degenera-

tive disc in itself is not a disease condition for which the Special Fund is liable under KRS 342.120. The Special Fund should not be liable for a person's aging process or for normal wear and tear. The rationale of the Green Valley Coal case does not support its conclusion. If industry takes a man as it finds him, then the employer should bear the risk in such situations and not the Special Fund. This view of the problem, however, should not be interpreted as holding that no apportionment is possible either in those instances where the degenerated disc is merely a manifestation of an underlying, dormant, nondisabling disease which is aroused into disabling reality by a work-connected injury, or to those situations where a degenerated disc causes a dormant, nondisabling disease that is triggered into disabling reality by a work-connected injury.

Nevertheless, the statutory intent is clear that the employer may pass off part of the risk to the Special Fund only in those instances where the nondisabling, dormant, pre-existing condition is caused by *disease*.

The judgment is affirmed.

All concur.