**John W. YOUNG, Commissioner of Labor, etc., et al., Appellants,**

**v.**

**Herman STACY and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

Nov. 7, 1969.

Rehearing Denied March 13, 1970.

Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, for John W. Young, Commissioner of Labor.

J. W. Craft, Jr., Craft & Haynes, Hazard, for Collins Construction Co.

William M. Melton, Hazard, for Herman Stacy.

NEIKIRK, Judge.

Herman Stacy, 43 years old and a resident of Hazard, Kentucky, had been employed for five years by the Collins Construction Company as a construction worker doing heavy manual labor when he suffered a back injury on December 20, 1966. Stacy's original application for adjustment of claim was filed with the Workmen's Compensation Board on June 16, 1967. The date on which Stacy filed his original application preceded the effective date of Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968); therefore, the Osborne case is not applicable because it had prospective application only. While this claim was being processed, Stacy continued in the employment of Collins Construction Company, doing light carpentry work, and on September 26, 1967, Stacy received another injury, this time to his knee. Stacy amended his original complaint to include the second injury.

Stacy, two of his fellow workers, Dr. Carl Friesen, Dr. K. Armand Fischer, and Dr. C. Dana Snyder testified in Stacy's behalf. The employer offered no witnesses but requested the Board to appoint a doctor to examine Stacy, pursuant to KRS 342.121, since the Special Fund was a party. The Board appointed Dr. Eugene Parr to make the examination. Dr. Parr, on May 29, 1968, found that Stacy had a 15% permanent partial functional impairment to the body as a whole, 5% of which he attributed to a "degenerative disc disease existing prior to December 20, 1966"; 5% of which he attributed to an "aggravation of the pre-existing condition"; and 5% of which he attributed to the knee injury.

On August 26, 1968, the Workmen's Compensation Board awarded Herman Stacy 15% permanent partial disability. It attributed 10% of the disability to "arousal of a pre-existing diseased condition" and 5% to the "injury of September 26, 1967." From this award Stacy appealed to the Knott Circuit Court, which rendered a judgment directing the Board to award Stacy permanent total disability. From this judgment the Special Fund and the employer, Collins Construction Company, have appealed.

The questions presented are whether the Workmen's Compensation Board was bound by the findings of Dr. Parr, and, if so, what specifically were his findings.

■ We find ourselves again confronted by an old terminology problem: i. e., what does disability mean? In our cases and the treatises on workmen's compensation law there are references to medical impairment, bodily impairment, physical impairment, functional impairment, physical limitation, functional limitation, medical disability, physical disability, functional disability, and physical incapacity. Each refers to the same thing, which is the medical examiner's evaluation of the impairment of bodily function from a physical standpoint. Reference is also made to occupational disability, which is the process of relating the impairment of bodily function to the requirements of an occupation. The terms "medical disability," "physical disability," "functional disability," and "occupational disability" are frequently used, but it seems the real problems and misunderstanding arise when the word "disability" is used alone without an adjective to help clarify its meaning.

The importance of distinguishing between the types of disability was pointed out in Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78 (1965), where we stated that:

"* * * Whatever may be the degree of physical impairment established by the medical testimony, the board must make its own estimate, from the evidence as a whole, of whether and to what degree that impairment actually disables the claimant from performing the duties of his occupation. Percentage of physical limitation is a medical question; percentage of disability is not."

The Board asked Dr. Parr the total percentage of permanent or other disability

that plaintiff now suffers to his body as a whole. Dr. Parr stated that there was a "15% permanent partial functional impairment to the body as a whole that the patient now suffers." Given this functional impairment, it was the Board's duty to translate this functional impairment into occupational disability.

■ We must now consider whether it was proper under the facts herein presented to translate a 15% permanent partial functional impairment into an award of 15% permanent partial occupational disability.

The circuit court found, and the uncontradicted testimony shows, that Stacy was engaged as a construction worker at the time of his injuries and that this work required heavy manual labor in the form of lifting, stooping, and bending. Stacy testified that he was no longer able to do the heavy manual labor required of a construction worker. Two of his fellow workers testified that Stacy no longer did heavy manual labor. Dr. Carl Friesen stated that "the patient could not return to doing heavy work that he did before, at least for a prolonged period of time, and very likely of a permanent nature." Dr. Friesen's report was given before the knee injury occurred, so it was limited to the back injury of December 20, 1966. Dr. K. Armand Fischer stated that "Apparently this patient should always wear a back brace and do no heavy lifting, stooping and bending." Dr. C. Dana Snyder stated that "I think for doing manual labor, he is totally disabled." Dr. Parr was not asked for and did not volunteer any advice on whether Stacy could do manual labor. There was no evidence before the Board to refute the testimony that Stacy was unable to do hard manual labor. In the case of Ed Hall Drilling Co. v. Profitt, Ky., 424 S.W.2d 403, we said:

"* * * the finding of occupational disability in a degree no greater than the percentage of functional impairment was unrealistic and clearly erroneous."

The Board should have translated Stacy's permanent partial functional impairment into an award of more than 15% permanent partial occupational disability.

■ It was the function and duty of the Board to determine the occupational disability from all the evidence. If Stacy is unable to perform the work in his former occupational classification, though he may be found to be able to do other kinds of work, the Board should base its award accordingly. Crib Diaper Service v. Standifer, Ky., 436 S.W.2d 501 (1969); Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905 (1964).

■ Should the Board find that Stacy's occupational classification was that of a heavy laborer-skilled, the Board should award total and permanent disability. However, should the Board find his occupational classification was primarily skilled construction without heavy labor, then an award of less than total and permanent disability would be justified. These necessary findings must be made by the Board and not by the courts.

The circuit court's judgment finding that part of the Board's award concerning occupational disability to be erroneous is correct. However, the judgment is reversed with directions to enter a new judgment remanding this case to the Board for further proceedings consistent with this opinion.

All concur.