Elmer L. THOMPSON, Appellant,

v.

GENERAL ELECTRIC COMPANY et al.,
Appellees.

Court of Appeals of Kentucky.

Dec. 18, 1970.

Lee C. Lett, pro se, Ruben Hicks, Whitley City, for appellant.

John Breckinridge, Atty. Gen., George Rabe, Asst. Atty. Gen., James H. Barr, Frankfort, for appellee.

John L. Harbolt, Edward L. O'Connor, Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for appellant.

Gavin H. Cochran, Louisville, J. Keller Whitaker, Frankfort, John Riehl, Jr., Louisville, for appellees.

PALMORE, Judge.

On January 5, 1967, the appellant, Elmer Thompson, strained his back while working on an assembly line in General Electric Company's plant at Buechel, Kentucky. His claim for workmen's compensation resulted in an award based on a finding of 25% permanent partial disability, 80% of which was attributed to the injury and 20% to a pre-existing condition. G.E. appealed to the Jefferson Circuit Court, which set aside the award and directed the Workmen's Compensation Board to enter an order consistent with the medical report of Dr. McDaniel Ewing, who had been appointed under KRS 342.121 and had reported that in his opinion Thompson had no existing disability. Thompson appeals.

The only question is whether Dr. Ewing's report was conclusive and binding upon the board. Cf. KRS 342.121(4); Young v. Mullins, Ky., 459 S.W.2d 593 (decided November 6, 1970); Adkins v. Caney Branch Coal Company, Ky., 459 S.W.2d 771 (decided October 30, 1970); Young v. City Bus Company, Ky., 450 S.W.2d 510 (1969); Witten v. Terry Elkhorn Mining Company, Ky., 449 S.W.2d 744 (1969). The circuit court held that it was, but our opinion is that the exceptions filed by the claimant were sufficiently specific to open it to review.

A brief statement of the factual background may be helpful.

Thompson's assembly-line job entailed strenuous exertion only to the extent that from time to time when something went awry it was necessary for him to lift or assist in lifting air conditioners off the line and placing them on the floor. He approximated their weight as 70 or 80 pounds. It was the opinion of physicians testifying in his behalf that for an indefinite time in the future he would not be able to resume this particular aspect of his employment. One of the physicians, Dr. Allan Zoeller, an orthopedic surgeon, stated that Thompson had sustained a ligamentous injury to the lumbo-sacral spine and estimated that his temporary total disability was 20% attributable to certain pre-existing "anomalies" such as lordosis which had been dormant and nondisabling but had been aroused into disabling reality by the accident. On the other hand, an orthopedist who examined Thompson on behalf of G.E., while conceding the presence of abundant subjective symptons, could find no objective symptons and expressed the opinion that he was suffering from an underlying chronic back strain.

On October 16, 1967, the board entered an order appointing a disinterested physician, Dr. Robert L. Keisler, another orthopedist, to examine the claimant pursuant to KRS 342.315 for the purpose of determining "the nature, extent, degree and probable duration of the disability, if any." After conducting such an examination Dr. Keisler filed a written report stating that the patient had "symptoms and signs characteristic of mild lumbosacral instability and strain" with prognosis of 10% permanent disability for moderate or average activities and 25% for heavy activities. In a subsequent deposition Dr. Keisler explained that these percentages were estimated in terms of occupational disability. It was his opinion that by reason of the pre-existing "anomalies" we have heretofore mentioned in connection with Dr. Zoeller's testimony Thompson was to some extent disabled prior to the accident.

At this juncture of the proceedings G.E. moved that the Special Fund be joined as a party and that Dr. Keisler's deposition be treated as a report made pursuant to KRS 342.121 rather than KRS 342.315. The

board sustained the motion with respect to making the Special Fund a party but over-ruled it with respect to the medical deposition and, instead, appointed Dr. McDaniel Ewing to examine the claimant and submit a report under KRS 342.121. In its order the board directed Dr. Ewing to answer seven numbered questions, five of which related to the matter of pre-existing conditions and the other two dealt with present disability alone. Specifically, question 5 required the doctor to estimate the total percentage of "permanent or other disability that plaintiff now suffers to his body as a whole."

Instead of answering the questions as propounded, Dr. Ewing submitted a brief report summarizing the case history related to him by the patient, giving the objective results of his physical examination, diagnosing a mild sprain of the lumbar musculature, and concluding as follows:

"I find no evidence of permanent disability on examination of Mr. Thompson's trunk and extremities. This patient is very small in stature and in my opinion would have difficulty doing heavy manual labor under any circumstances. At the present time in my opinion he is able to perform all types of work that he could do before he developed back symptoms on January 5, 1967."

The claimant filed timely exceptions to Dr. Ewing's report which G.E. characterizes as "scattergun" and not sufficient to authorize a review. It may be conceded that some of the exceptions were too general in nature but others, we think, were adequate. A scattergun charge is not necessarily all powder and no shot, and if one shot strikes the target it is immaterial how many of the others miss.

Whatever may have been the shortcomings in Dr. Ewing's report, his conclusion that the claimant was free of any existing disability constituted a direct answer to question 5. Shorn of excess verbiage, the first point stated in Thompson's exceptions was to the effect that the finding of no existing disability was patently contrary to

the case history and inconsistent with the physical existence of muscular spasms and certain limitations of motion observed by Dr. Ewing 15 months after the date of the injury. Another was that Dr. Ewing's conclusion was inconsistent with those of Dr. Keisler, who also had been appointed by the board. We regard these two exceptions as sufficient. The first one states a specific and substantial reason for questioning the conclusion that Thompson had no existing disability. The second, no doubt, would be insufficient had it said merely that Dr. Ewing's finding was inconsistent with those of other medical witnesses, but it is another matter when the disagreement lies between two physicians who have been appointed by the board and who are, presumably, disinterested. That, it seems to us, provides reasonable ground for further consideration in the form of a review.

Since the Special Fund did not appeal from the award of the board we need not consider the propriety of apportioning 20% of the liability against it for a pre-existing condition that was not a disease. See, however, Young v. City Bus Company, Ky., 450 S.W.2d 510 (1969).

The judgment is reversed with directions that the award of the Workmen's Compensation Board be sustained.

All concur.