John W. YOUNG, Commissioner, Appellant,

v.

James Allen MONROE, Middletown Manufacturing Company, et al., Appellees.

Court of Appeals of Kentucky.

April 30, 1971.

Martin Glazer, Dept. of Labor, James F. Perkins, Dept. of Labor, Frankfort, for appellant.

Stuart E. Alexander, Frank E. Haddad, Jr., Louisville, for appellees.

VANCE, Commissioner.

The single question presented by this appeal is whether *spondylolisthesis* is a disease condition within the meaning of KRS 342.120.

James Allen Monroe, an employee of Middletown Manufacturing Company, was injured on April 4, 1968. Prior to his injury he was afflicted with a dormant non-disabling condition of the spine known as spondylolisthesis. The Workmen's Compensation Board determined that spondylolisthesis was a disease condition which was aroused into disabling reality by the injury and awarded compensation based upon total and permanent disability. The award was apportioned 33⅓ per cent against the employer by reason of the injury and 66⅔ per cent against the Special Fund by reason of the arousal of the dormant non-disabling disease condition into disabling reality. The circuit court affirmed the award and the Special Fund has appealed.

KRS 342.120 provides for the apportionment of a compensation award between the employer and the Special Fund when an employee is found to have a dormant non-disabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury or an occupational disease.

In Young v. City Bus Co., Ky., 450 S.W. 2d 510 (1969), we held that a dormant non-disabling condition which was aroused into disabling reality would not permit apportionment of a compensation award unless it was caused by disease and we held therein that a degenerative disc due to aging was not a disease.

▪ Although this court has not attempted to formulate a definition of disease as that term is used in KRS 342.120, we have specifically rejected the broad definition of the term used in some textbooks and dictionaries wherein disease is defined as any deviation of the body from its normal or healthy state. Appalachian Regional Hospitals, Inc. v. Brown et al., Ky., 463 S.W.2d 323 (1971), Young v. Long, et al., Ky., 463 S.W.2d 326 (1971) and Kentucky Convalescent Home, et al. v. Henry, et al., Ky., 463 S.W.2d 328 (1971).

▪ In this case medical testimony was presented to the effect that spondylolisthesis is a disease but this testimony was elicited through the use of a definition of disease as any deviation of the body from the state of normal health. The doctors indicated in their examination that absent the restriction of such a definition, they

would characterize spondylolisthesis as an abnormality, a derangement or congenital weakness rather than a disease as that term is customarily used and understood by physicians.

Doctor William C. Mitchell testified as follows:

"Q. Doctor, with respect to this spondylolisthesis, assume for the purpose of my next question that the word disease is used in the context of applying generally to any deviation of the body from its normal or healthy state or a general condition of non-health, whether or not it is at that time causing any overt symptoms. When used in that sense could this spondylolisthesis be characterized as a disease, pre-existing disease?

"A. Medically I wouldn't consider it a disease. I would consider it an affectation or a weak or unstable spot in his low back. But in the context that you're reading it, I presume that it could be called a disease because it is something that *effects* [sic] the human body."

Doctor Wayne W. Kotcamp testified as follows:

"Q. And by that you mean that was a spondylolisthesis there?

"A. Yes, this would indicate a spondlolisthesis. Now, the defect which he has posteriorly at L–5, they fused over this and you can't—and you cannot—you cannot see that part of it; the front part they didn't, you know, fuse up there and you can see it.

"Q. What grade spondylolisthesis would that be, would you term that, if you're able to do so?

"A. Well, this would come under a grade—about a grade one.

"Q. Now, is a—strike that. Now, Doctor, assuming for the purpose of my next question that the word disease is not used as indicating something which is causing dis-ease, but is used in the sense of any deviation of the body from its normal or healthy state, or a condition of non-health as distinguished with a condition of health.

"Q. Would a spondylolisthesis grade one be a disease, pre-existing disease though not causing any symptoms and otherwise dormant prior to the injury which this man complained?

"A. Yes.

"Q. And do you think—

"A. (Interrupting) The disease you're speaking of, what you're trying to define, what would be a better term would be derangement rather than disease, like something you catch, or an illness."

Doctor Thomas M. Marshall testified as follows:

"Q. Now Dr. Marshall, is this spondylolisthesis a normal developmental thing in the growth and aging of the body, or is it some abnormal condition?

"A. This is an abnormal condition which occurs in people, that is, with the joint primarily in the lower lumbar spine or the lower back, fail to fuse properly, and there is thus more play or more movement at that joint than is normal, and this in turn will allow some slippage of one vertebra on the other.

"Q. Now Doctor, for the purpose of my next question, consider that the word disease doesn't mean a dis-ease, but that it means a condition of non-health as found in the human body, which may be causing symptoms or which may not be causing symptoms, and would this spondylolisthesis under that definition be a pre-existing disease?

"A. What is your definition again?

"Q. A condition of non-health of the body which may or may not be causing actual symptoms.

"A. Well obviously you got this out of a textbook somewhere.

"Q. Out of the dictionary, Doctor.

"A. Well I'm sorry, it is a sad question and I don't know the answer to it. I don't know what you mean by disease. When you say non-health, I don't know the answer to the question, I'm sorry.

"MR. ALEXANDER: Let's go off the record.

"MR. GEORGE: All right.

"MR. RIEHL: Fine

"(Off the record remarks)

"Q. Is this a physiological or pathological abnormality?

"A. This is an abnormality, this is something that the individual was born with. I can't offhand give you a very good definition I suppose of disease, but I wouldn't classify this as a disease. This is a congenital abnormality and this is something that this man was born with and many people have it, and have no symptoms referrable to it and others do have symptoms to it, as a result of it, I should say. This is a failure of fusion of a portion of the joints in the lower back and in my opinion this is not a disease process. I should state that I'm talking about a problem which is primarily an orthopedic problem and not a neurosurgical problem generally."

Doctor Stanley Collis testified as follows:

"Q. Now, Doctor, assume for the moment that my next question in using the word disease anticipates such a meaning of that phrase as is contained in the College Edition of Websters New World Dictionary, 1960 Edition, which I borrowed from your secretary and the primary meaning of the word disease as defined in that dictionary is any departure from health; illness in general. And a synonym states that disease may apply generally to any deviation of the body from its normal healthy state or refer to a particular disorder with a specific cause and characteristic symptoms. Now, assuming that meaning to the word disease, would a spondylolisthesis be disease condition?

"MR. RIEHL: Note my objection to the question.

"A. I think it would be a deviation of the normal state of a back.

"Q. All right.

"A. I'll agree with that part of the statement but that's all.

"Q. So that under this definition it would be phrased—

"A. (Interrupting) In other words, it's not normal and what is it—it is a deviation, it's an abnormality."

This was the only medical testimony considered by the board and it can be readily seen that the doctors were reluctant to classify spondylolisthesis as a disease and if they can be said to have done so, it was only in the context of the broad definition of that term which has already been disapproved by this court.

In Young v. City Bus Company, Ky., 450 S.W.2d 510 (1969), we held that a degenerated disc in itself is not a disease. In Young v. Long et al., Ky., 463 S.W.2d 326 (Decided February 12, 1971), under the evidence presented therein, we held that spondylolisthesis is not a disease in itself.

In Appalachian Regional Hospitals, Inc. v. Brown, Ky., 463 S.W.2d 323 (1971), spondylolisthesis was characterized as "a slippage on one vertebra over another * * generally forward and inherent in it is a defect of the body structure * * *." It was said to be "most frequently or almost completely due to congenital defect of the bone." We held under that evidence that spondylolisthesis was not a disease.

It appears from the medical testimony in this case and in Young v. Long et al and Appalachian Regional Hospitals, Inc. v. Brown, supra, and from recognized medical literature that spondylolisthesis is simply

a displacement of one vertebra over another usually congenital in nature, and is in fact a defect of the body.

It would be an anomalous situation indeed if we were to permit apportionment in some instances in which spondylolisthesis was brought into disabling reality by a subsequent injury and to deny it in others because the medical testimony indicated in one case that it was a disease while in the other the medical testimony indicated that the same condition was not a disease.

We are convinced that we should forestall such a possibility with a judicial determination that spondylolisthesis, like a degenerative disc, is not in itself a disease condition within the meaning of KRS 342.120 and we so hold.

The judgment is reversed with directions that a judgment be entered directing the Workmen's Compensation Board to enter an award in conformity with this opinion.

All concur.