CENTRAL UNIFORM RENTALS et al., Appellants,

v.

Lois RICHBURG, Appellee.

Court of Appeals of Kentucky.

June 11, 1971.

———◆———

James M. Graves, Larry L. Johnson, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, John B. Breckinridge, Atty. Gen., Frankfort, for appellants.

Joe G. Leibson, Louisville, for appellee.

DAVIS, Commissioner.

The Workmen's Compensation Board found that Lois Richburg suffered a low back strain as the result of a work-connected incident on October 5, 1967. The Board concluded that the injury caused 15% permanent partial disability and made its award accordingly. (No question is presented concerning an allowance for a period of temporary total disability.) The Special Fund was made a party to the proceeding on motion of the employer, but the Board found no basis for apportionment and dismissed the Special Fund from the proceeding. No appeal was taken as to that ruling by either the employee or the employer.

The employee appealed to the circuit court which ruled that the Board's award was clearly erroneous and directed that an award be made for total permanent disability. The employer challenges that ruling of the circuit court.

Following the injury on October 5, 1967, Mrs. Richburg was off work until the latter part of January 1968. She was examined by a company doctor in January 1968, who pronounced her able to resume work. She went back to work and continued without incident until August 12, 1968, when she injured her right hand. She undertook to return to work on August 19, 1968, but found that the condition of her hand prevented her operating a pressing machine. She asked her foreman to assign other duty not requiring the use of the hand, but he declined. She left work, not because of any back complaint, but on account of the hand injury. It was and is her contention that she is totally disabled because of disability produced by her back injury.

At the time of her injury Mrs. Richburg was forty-nine years old, about five feet three inches tall, and weighed approximately 240 pounds. She had had some problem with hypertension, and there was evidence that hypertrophic arthritis existed in her spine. She had worked for the appellant for about seventeen years and had not appeared occupationally disabled during that time.

Mrs. Richburg was examined by several physicians who testified. Dr. E. M. Hubbard, Jr., was the first doctor she saw after the incident of October 5. He related that she complained of low back pain but did not mention any injury incident as the cause of it. Dr. Hubbard did not see Mrs. Richburg after her visit to him on October 19, 1967. He had treated her on several earlier occasions beginning on August 20, 1966. Her chief problem, Dr. Hubbard said, was her obesity. He later noted hypertension and diagnosed her problem as "hypertensive heart condition." On at least two occasions prior to October 5, 1967, Dr. Hubbard had written notes to Mrs. Richburg's employer suggesting her assignment to light work and limited activity.

Next, Mrs. Richburg consulted Dr. John Ryan who expressed the view that the injury had caused a herniated disc. Dr. Ryan regarded her as totally and permanently disabled. He caused her to be hospitalized and called in for consultation Dr. Andrieves J. Dzenitis. Dr. Dzenitis found

no objective signs of a significant back injury or strain.

The next doctor on the scene was Dr. Richard Spear who examined Mrs. Richburg on January 31, 1968, for her employer, with a view to determining whether she was able to return to work. He found that she was able to resume work and advised her to continue to wear a low back brace. It was Dr. Spear's impression on January 31, 1968, that Mrs. Richburg had recovered from her acute lumbar back strain sufficiently to permit her to return to work. She did return to work and continued until August 12, 1968, when she left because of injury to her hand. Dr. Spear saw her respecting that incident and pronounced her fit to return to work as of August 19, 1968. She made no complaint to him concerning her back on the two visits in August relating to her hand. When she returned to work on August 19, 1968, she worked only forty-five minutes and left because of her hand, not her back. She never returned to work after that, and Dr. Spear did not see her after August 1968.

Dr. Avrom Isaacs examined Mrs. Richburg with regard to a soft tissue mass possibly attached to the right kidney. Dr. Isaacs was of the opinion that the mass was not causing the lumbosacral strain symptoms.

Dr. William McDaniel Ewing examined Mrs. Richburg on January 10, 1969, at the request of her employer. He found limitation of motion of 50% in all three planes in the lumbar region. He noted some hypertrophic arthritis and expressed the conclusion that she exhibited a sprain of the lumbar musculature, with marked obesity and a possibly cyst of the right kidney. Dr. Ewing said that Mrs. Richburg's obesity significantly affected her posture and range of motion. He noted that standing on her feet for work could be quite difficult, even when wearing a back support.

When the Special Fund was joined as a party, the Board appointed Dr. K. Armand

Fischer pursuant to the provisions of KRS 342.121. In effect, the Board sustained objections to Dr. Fischer's report, since it authorized the taking of his deposition and noted in its opinion that it had considered the entire record. See Young v. White Deer Coal Company, Ky., 441 S.W.2d 108.

Dr. Fischer estimated that the injury of October 5, 1967, produced functional partial permanent disability of 15% to the body as a whole. He also reported and testified that Mrs. Richburg had hypertrophic arthritis in her dorsal and lumbar spine and some disc problems in the lumbar and lumbosacral area, which were aroused into disabling reality to the extent of 15% partial permanent disability to the body as a whole. In his report and deposition Dr. Fischer emphasized that Mrs. Richburg was grossly overweight. He said that her back motions were limited 50% in all directions and that her straight-leg-raising test was limited 50% on both sides. He noted about ten degrees of shortening of the right and left heel cords, but said that condition was not caused by the injury. Dr. Fischer noted that X rays of the patient's thoracic and lumbar spine revealed old dorsal rounding of the spine with hypertrophic arthritic changes of an extensive nature, with other hypertrophic arthritic changes in the lumbar spine which were not quite as extensive. He found a mild narrowing of the lumbar spine disc and a lesser narrowing of the second lumbar disc space.

In his deposition Dr. Fischer stated that he did not deem it advisable for Mrs. Richburg to lift, stoop, or bend; he noted that Mrs. Richburg had been wearing a back support and stated that she should continue wearing it or something stronger.

The following questions and answers are noted in Dr. Fischer's deposition:

"Q. Now, in your report, Doctor Fischer, you find on physical examination that

this lady's back motions were limited fifty percent in all directions?

A. Yes, sir.

Q. And that her straight leg raising test was limited fifty percent on both sides?

A. Yes, sir.

Q. Now, to what was this attributable, this limitation?

A. Well, it was attributable to a low back condition.

Q. Was it in any way connected to or related to her obesity?

A. Well, I would say that her, her obesity has contributed to her condition because she does weigh two hundred and forty pounds and she has arthritis in her spine and underlying arthritis is of a severe nature, is often quite a factor in a woman at this age who has obesity.

Q. Okay. Now, Doctor, the arthritis which you set forth in your report, can you state within a reasonable degree of medical certainty, as to whether or not that pre-existed the day of the alleged October accident on October—

A. (Interrupting) It's my opinion that it pre-existed the accident.

Q. Could it be described as pre-existent and previously dormant, nondisabling disease condition which was capable of being aroused into disabling reality?

A. Yes, sir.

Q. By such as trauma?

A. Yes, sir.

Q. With the type of accident or injury which she described to you which she alleged occurred at work aroused such a condition?

A. It could, yes, sir."

Appellee contends, and the circuit court held, that the factual situation here is indistinguishable from the factual background in Osborne v. Johnson, Ky., 432 S.W.2d 800; Young v. Stacy, Ky., 450 S.W.2d 506; Department of Economic Security v. Adams, Ky., 450 S.W.2d 819; and Kenwood One-Hour Martinizing, Inc. v. Hager, Ky., 460 S.W.2d 21. In those cases and others, the court has held that it was unreasonable for the Board to disallow an award for permanent total disability when the evidence fairly demonstrated that a less-than-total functional impairment resulted in occupational disability to perform the claimant's usual occupation and impairment in the performance of other kinds of work.

In Osborne v. Johnson, Ky., 432 S.W.2d 800, the Board made an award on the basis of 15% permanent partial disability. The circuit court reversed and remanded for entry of an award for total permanent disability. This court affirmed. Johnson was a coal miner, claiming disability from a back injury. The evidence showed that he was disabled from heavy lifting, stooping, or bending. In such circumstances this court affirmed the circuit court's reversal of the Board's finding of only 15% disability.

In Young v. Stacy, Ky., 450 S.W.2d 506, the Board's award based on 15% permanent partial disability was reversed by the circuit court, which directed an award of total permanent disability. This court held that the circuit court was correct in upsetting the 15% award, but in error in directing the 100% award in the absence of a finding by the Board as to the claimant's proper occupational classification. It was pointed out that an award of 100% would be appropriate if the finding was that the occupational classification was "heavy laborer-skilled." In the present case Mrs. Richburg's work requires manual labor. There is nothing in the record refuting the evidence that she is disabled from performing her work assignments.

The effect of the rulings in the other two cases relied on by appellee, cited above, is substantially the same as obtained in Young v. Stacy, supra, and Osborne v. Johnson, supra. There was no legitimate basis for the Board's finding that the claimant's occupational disability was only 15% in face of the evidence of her absolute inability to perform the work of her usual occupation and the impairment of her capacity to perform other kinds of work.

As noted, the Board absolved the Special Fund, and that ruling is final, since no party has appealed from it. The Board found, as had been reported and testified by Dr. Fischer, that Mrs. Richburg sustained a back strain on October 5, 1967, which resulted in permanent partial occupational disability to the extent of 15% to her body as a whole. It is evident that the Board ascribed the entire 15% of disability to the results of the back strain, independently of any other residual disability. In short, the Board appears to have disregarded the evidence which dealt with claimant's obesity and hypertrophic arthritis as specific factors producing disability beyond that caused by the back strain alone.

It is true that the report of Dr. Fischer was not conclusive, since the Board sustained objections to it. However, the medical evidence of Dr. Fischer and Dr. Ewing was all of the medical testimony dealing with the *current* condition of Mrs. Richburg. Both of these doctors pointed out that the claimant's obesity and hypertrophic arthritis play important roles in disabling her from performing work involving lifting, stooping, and bending, quite aside from the back strain itself.

The Board specifically held that the evidence failed to present a case of liability of the Special Fund. This must mean that the Board did not regard the obesity or the hypertrophic arthritis as preexisting disabilities or dormant, nondisabling disease conditions. As to the obesity, the case is ruled by Kentucky Convalescent Home v. Henry, Ky., 463 S.W.2d 328, in which the court held that obesity, in and of itself, was not a dormant nondisabling disease aroused or brought into disabling reality within the meaning of KRS 342.120(1)(b).

This court has rejected the idea that "disease," as used in KRS 342.120, means any departure from the norm. Young v. Long, Ky., 463 S.W.2d 326; Appalachian Regional Hospitals, Inc. v. Brown, Ky., 463 S.W.2d 323; Kentucky Convalescent Home v. Henry, Ky., 463 S.W.2d 328; Young v. City Bus Company, Ky., 450 S.W.2d 510. In the City Bus case, the court observed:

> "If the worker is not disabled prior to injury, any dormant, nondisabling, preexisting condition, which the injury may have aroused into disabling reality, must be caused by *disease* in order for apportionment to be possible." Id. 450 S.W.2d at page 514.

It was stated in City Bus that a dormant, nondisabling, preexisting degenerative disc in itself is not a disease for which the Special Fund is liable under KRS 342.120. The effect of that conclusion was not that the employee shall go uncompensated with respect to the disability caused by arousal of such a condition. Rather, it was noted that the employer shall be liable under the theory that industry takes the worker as it finds him.

Hypertrophic arthritis is defined in Dorland's Illustrated Medical Dictionary, 24th Edition, as follows:

> "[A] form of chronic arthritis occurring chiefly in elderly people, and marked by degeneration and hypertrophy of the bone and cartilage and thickening of the synovial membrane: called also *osteoarthritis* and *degenerative arthritis*."

Within this framework, it appears that "hypertrophic arthritis" is actually a degenerative condition, stemming from the aging process. As such, it falls within the same category as the degenerative disc

condition encountered in Young v. City Bus Company, Ky., 450 S.W.2d 510.

It follows, therefore, that the mere dismissal of the Special Fund did not serve to remove from the case the effect of the injury's "arousal" of the conditions of obesity and hypertrophic arthritis.

A reexamination of KRS 342.120 may be appropriate in considering the effect of the Board's findings in the present case. KRS 342.120 becomes applicable and affects apportionment, vel non, if either of two basic conditions is presented:

I.  The employee is disabled, whether from (a) a compensable injury; or (b) an occupational disease; or (c) preexisting disease; or (d) otherwise, *and* has received a subsequent compensable injury by accident, or has developed an occupational disease. KRS 342.120(1) (a).

II. The employee is found to have a dormant nondisabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease. KRS 342.120(1) (b).

Mrs. Richburg's condition before the injury of October 5, 1967, was nondisabling, so she falls under none of the categories mentioned in KRS 342.120(1) (a). As noted, none of her preexisting problems fits the definition of "disease" within the purview of this court's interpretation of KRS 342.120(1) (b). It follows that the Special Fund was properly discharged of liability. It also follows that the entire impact of this employee's disability must be borne by the employer, since the limiting provisions of KRS 342.120(3) and the exclusionary provisions of KRS 342.120(4) have no application, once it is determined that none of the circumstances is present which requires apportionment by the terms of KRS 342.120(1) (a) and (b).

The circuit court correctly determined that the extent of disability as established

by uncontradicted medical testimony was total and permanent. This claim is governed by the rules obtaining before the decision in Osborne v. Johnson, Ky., 432 S. W.2d 800.

The judgment is affirmed.

All concur.