**Richard E. PARROTT, Appellant,**

v.

**S. A. HEALY COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

March 16, 1956.

Rehearing Denied June 22, 1956.

---

James B. Meadows, Newport, Joseph I. Williams, Cincinnati, Ohio, for appellant.

James C. Ware, Covington, for appellees.

**STEWART, Judge.**

Richard E. Parrott's application for compensation before the Workmen's Compensation Board was denied and his petition for review filed in the Kenton Circuit Court was dismissed. He appeals.

The record shows Parrott sustained an injury from a strain in the lower region of his back on December 22, 1952, while lifting a water pump with other employees. He was treated by Doctor Otto S. Salsbery of Covington for a period from the date of the injury until January 7, 1953, at which time this doctor pronounced him fit to resume his former occupation. Part of Doctor Salsbery's treatment prescribed the wearing of a back brace by Parrott after he was dismissed. For this same period of time, by agreement between him and his employer and with the approval of the Board, he was awarded compensation benefits for total temporary disability; his doctor bills were paid and his back brace was furnished free. He returned to his employment with appellee, S. A. Healy Company, and remained with this company until he was discharged two months later.

After about a year had elapsed, Parrott moved to reopen the award on the ground of change of condition, KRS 342.125, and this motion was sustained on March 2, 1954. At the hearing he claimed he had become permanently partially disabled as a result of his injury.

Parrott, now thirty years of age, testified he had been employed in the past on different types of construction work. Prior to his injury, he asserted he was able to engage in all forms of strenuous physical activity. Since his injury, he has complained of "an awful pain," especially when "getting up in the mornings." He also thought his "back is actually getting worse," and, to avoid acute discomfort, he had to always call on a fellow workman to lift anything heavy for him.

Two orthopedic surgeons testified by deposition at the hearing, namely: Doctor Otto S. Salsbery, whose evidence was based upon his experience in treating Parrott, and Doctor I. Mark Zeligs of Cincinnati, whose opinion was constructed from the subjective symptoms of Parrott and his physical examination of the patient. Both physicians agreed Parrott had a congenital defect in the lumbo-sacral area of the vertebrae, technically called sponylolisthesis, which had been "lighted up" by the accident. Doctor Salsbery's testimony was to the effect that Parrott's damaged back had been relieved to the extent that he could return to his old employment and perform his customary work. He never did state Parrott was a well person; he merely explained: "He was much improved." The fact that Doctor Salsbery instructed Parrott to wear a back brace unquestionably militates against the idea that the former believed the latter had been restored to his previous health.

Doctor Zeligs, an instructor in orthopedic surgery at the College of Medicine of the University of Cincinnati, testified that, in the type of back Parrott had previous to his injury from the strain, the muscles, ligaments and other structures in that area had maintained an equilibrium that produced no disability until the balance was upset by the injury, but that when this equilibrium was disrupted by the traumatic impairment, the ligaments became so damaged they could not thereafter completely readjust. It was this doctor's opinion that as a consequence of the injury received on December 22, 1952, Parrott sustained a permanent partial

disability of thirty per cent relative to the body as a whole.

The Board in denying Parrott's application reasoned that the true test for determining a claimant's entitlement to disability payments is whether he "is unable to do now what he could do before his injury to the fullest capacity." We believe the disposition of this case on the theory advanced by the Board, which result in turn was upheld by the judgment of the circuit court, disregarded the plain requirements of KRS 342.110.

This statute provides, so far as pertinent here, that in a permanent partial disability case, if the future usefulness or occupational opportunities of the injured employee have been impaired by the injury, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury, the occupation of the injured employee and the age at the time of the injury. It also stipulates: "Compensation payable under this section shall not be affected by the earnings of the employe after the accident, whether they be the same, or greater, or less than prior to the accident. * * *"

 We believe the evidence in this case proved the pertinent fact that Parrott received as a proximate result of his injury a permanent partial disability. The testimony of every witness bears out this finding; nevertheless, generally speaking, only a physician qualified to express an opinion can establish evidence of a disability, its degree and its permanency. It is apparent the testimony of Doctor Salsbery does not contradict in any particular that of Doctor Zeligs. The first named doctor recognized the injury as the efficient cause of Parrott's impairment and he stated that the pain induced afterwards by Parrott's back condition is produced by nerve root irritation, which a back brace may relieve, but that if the pain persists surgery is the next step. We have shown that Doctor Zeligs spelled out in unequivocal language the disabling effect of the injury on Parrott's general well-being.

For the reason assigned, we hold the order of the Board dismissing Parrott's application was erroneous because the evidence does not support the finding of fact that Parrott suffered no compensable injury. Belcher v. Cornman's Adm'x, Ky., 265 S.W.2d 492, relied upon by appellee, is not in point. There the medical evidence was in conflict and the Board had the right to determine which of the divergent medical opinions was the most reasonable. In this case, as we have pointed out, there was no conflict in the medical evidence.

 Under KRS 342.110 industry takes a man as it finds him and, if by reason of an injury some latent congenital or pre-existing condition is "lighted up", excited or aggravated the disability flowing therefrom is compensable within the purview of this statute. It is apparent the Board, as well as the circuit court, misconstrued the foregoing statute because it gave no consideration to the effect Parrott's impairment could have on his future usefulness or his occupational opportunities. Since the disability set in motion by the injury undoubtedly will limit Parrott's capacity to work and also the scope of his employability in the years ahead of him, after taking into account the controlling factors mentioned in KRS 342.110, compensation should be allowed according to the percentage of incapacity produced by the injury. Of course, the award should be apportioned according to the contribution of the injury to Parrott's disability. See National Distillers Products Company v. Jones, 309 Ky. 394, 217 S.W.2d 813.

We conclude the evidence showed there has been a worsening of Parrott's physical status since the previous determination of his case which justified a reopening and reconsideration of the award. See Clear Fork Coal Co. v. Gaylor, Ky., 286 S.W.2d 519.

 It is also argued Parrott should not be permitted to receive compensation under KRS 342.035(2) for the alleged reason that he neglected to follow the advice of his physician in respect to wearing the back brace. The above statute provides that if

an injured employee's impairment is aggravated, caused or continued by an "unreasonable failure" to submit to competent medical aid or advice, such dereliction shall be cause for denying compensation benefits. This contention is untenable because there was no medical evidence which tended to show that Parrott's failure to wear the back brace is the proximate or direct cause of his continuing disability. Even Doctor Salsbery doubted whether the back brace would correct Parrott's infirmity to any appreciable extent.

Wherefore, the judgment is reversed with directions that it be set aside and that the circuit court refer the case back to the Board for further proceedings in conformity with this opinion.