**CONTRACTORS SERVICE & SUPPLY COMPANY, Appellant,**

v.

**J. W. CHISM et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 10, 1958.

C. W. Swinford, Stoll, Keenon & Park, Lexington, for appellant.

Thomas D. Shumate, Shumate & Shumate, Richmond, for appellees.

STEWART, Judge.

This is an appeal from a judgment affirming an award of the Workmen's Compensation Board which found appellee, J. W. Chism, to be seventy-five per cent permanently and partially disabled as a result of a back injury he received in the course of his employment with appellant, Contractors Service & Supply Company. Chism filed a cross-appeal contending that the Board should have awarded him total permanent disability benefits.

Chism injured his back on February 22, 1954, while in the act of lifting a box of steel bits weighing about forty pounds. The pain was of such severity that he collapsed. Chism testified he had never suffered from any physical impairment prior to his claimed disablement. According to him, he had been employed regularly as a truck driver and had performed all kinds of manual labor, much of which required heavy lifting on his part. He stated that since his back condition he cannot lift anything nor work at any gainful occupation. Chism, age 45, is of limited education, and has no special training that qualifies him for any particular kind of work other than the type of manual labor mentioned.

On the day of the accident Chism went to see his family doctor in Winchester who,

in turn, referred him to Dr. Kearns R. Thompson, of Lexington. Dr. Thompson, an orthopedic surgeon who testified in behalf of Chism's employer, the real appellant herein, stated that the first physical examination of Chism, which was made shortly after the injury, revealed that he had spondylolisthesis with symptoms also suggestive of nerve root pressure. Dr. Thompson defined the condition of spondylolisthesis to be one of a congenital origin whereby the spine is attached to the pelvis by fibrous tissue rather than by bone structure. The nature of this defect causes instability and excessive motion of the spine where it joins the pelvis.

He further testified he performed two operations on Chism to stabilize this spinal impairment, and that, in his opinion, the result of the two operations enabled Chism to have a stronger and sounder back than he had possessed prior to the injury, and that, for this reason, Chism had no permanent disability and could go back to doing the type of labor he was formerly engaged in. On cross-examination Dr. Thompson stated that Chism would have a permanently stiff back. Nevertheless he believed such a handicap would render him more fit for manual labor than one who has excessive motion in his back.

Dr. Ralph J. Angelucci, a neurosurgeon and also a witness for appellant, testified that at the request of Dr. Thompson he examined Chism on March 6, 1954. At the time of this examination with Dr. Thompson, Dr. Angelucci thought Chism had symptoms of a herniated disc and suggested he be subjected to conservative treatment. He again saw Chism the following month, and with Dr. Thompson performed the neurological part of the first operation on this patient on April 29, 1954. This operation did not reveal any disc protrusion but it did uncover a nerve root that was embarrassed by bone and ligamentous pressure. Dr. Angelucci stated that he removed the nerve root trouble, and then turned the procedure over to Dr. Thompson

for spinal fusion, since a considerable instability was seen to be present. He last saw Chism in October of 1955, learning then that Dr. Thompson had performed a second fusion the previous March. Dr. Angelucci testified that from a neurological standpoint Chism was suffering a five to ten per cent permanent partial disability. However, on cross-examination he appraised Chism's permanent partial disability from a neurological and also from an orthopedic standpoint to be between thirty and thirty-five per cent.

Dr. Marion G. Brown, an orthopedic surgeon called to testify for Chism, stated that he had examined him on one occasion, that being on February 6, 1956. Dr. Brown was of the opinion that Chism was suffering fifty-five per cent permanent partial disability. This evaluation was based on the history of the case given him by Chism and on his reading of X-rays made by him at the time. Dr. Brown further said on cross-examination that he did not notice any indication of congenital defects in the back.

It was from this medical testimony and no doubt from the claimant's evidence that Chism was awarded compensation for seventy-five per cent permanent partial disability to his body as a whole, and additionally he was allowed medical expenses not exceeding $2,500.

Chism continues to have a considerable amount of pain in the low back area and to have diminished sensation in the left great toe and in the left foot and outer leg. He wears a brace off and on. Although he has never done anything but hard manual labor, according to him, he has not been able to do any work even around the house.

KRS 342.110 provides that in a permanent partial disability case, if the future usefulness or occupational opportunities of the injured employee have been impaired by the injury, compensation shall be determined according to the percentage of disa-

bility, taking into account, among other things, any previous disability, the nature of the physical injury, the occupation of the injured employee and his age at the time of the injury.

■ In construing KRS 342.110 we have written that if, by reason of an injury, some latent disease or pre-existing condition is "lighted up", that is, initiated or excited or combined with, the disability flowing therefrom is compensable within the purview of this statute. Oftentimes the muscles, ligaments, bones, nerves and other structures in the damaged area had maintained an equilibrium that produced no disability until the balance was upset by the injury. Many times when this equilibrium was disrupted by the traumatic impairment, the injured region could not thereafter completely readjust. Of course, the award in cases of this character should be apportioned according to the contribution of the injury to the pre-existing condition. See Parrott v. S. A. Healy Co., Ky., 290 S.W.2d 798. See also Larson's Workmen's Compensation Law (1958 Edition), Sec. 12.20, pp. 170 to 171.

■ Under the factual situation presented here the Board could justifiably find that Chism's injury arose out of the accident and that it was of traumatic origin. However, we believe the percentage of disability, namely, seventy-five per cent permanent partial impairment arrived at by the Board is not supported by the evidence. This is the type of case where the degree of impairment is controlled by the testimony of competent doctors. We made this statement in City of Owensboro v. Day, 284 Ky. 644, 145 S.W.2d 856, 859, and the rule enunciated applies here:

"Therefore, when the disputed fact is one relating to a particular science, concerning which only an expert may possess knowledge, then the witness necessarily becomes an expert in that science, since laymen are not supposed to—and in a great majority of the cases do not—possess knowledge concerning the involved obscure and scientific fact."

It is insisted Chism's testimony that he is totally helpless should be strongly considered along with the medical evidence and that his proof should be allowed to augment the percentage of his disability. This is a case where there is a strong indication that a pre-existing latent infirmity may have been precipitated by the impact of the injury. Such a situation, if fully established, may call for an apportionment of the percentage of incapacity attributable to the accident. To reach such a result, it may be necessary to determine the extent of the previous diseased condition. We conclude under the circumstances that the only competent witnesses to prove the decisive fact involved must necessarily be members of the medical profession.

Dr. Thompson's medical opinion was to the effect that Chism suffered from a disease that was wholly congenital in origin. It was his view Chism was in better physical shape, as far as his back was concerned, after the two operations than before. Dr. Angelucci believed Chism experienced between thirty and thirty-five per cent partial disability to the body as a whole. He explained he had not attempted to estimate Chism's debilitated condition from the standpoint of orthopedic surgery and declared it could be much higher from the viewpoint of an orthopedic surgeon. Apparently his estimate of thirty to thirty-five per cent permanent partial incapacity to the body as a whole was based primarily upon his neurological examination and was given without very much information as to Chism's condition from an orthopedic standpoint. Dr. Brown advanced the opinion that Chism was suffering fifty-five per cent permanent partial disability to the body as a whole. Thus the maximum impairment arrived at by the medical experts was fixed at fifty-five per cent permanent partial disability and the amount of the award based upon seventy-five per

cent permanent partial disability is not in our opinion sustained by the evidence.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeal and the case is ordered remanded to the Board for further proceedings in conformity with this opinion.