**KNOTT COUNTY BOARD OF EDUCATION, Appellant,**

v.

**Dingus WILLIAMS et al., Appellees.**

Court of Appeals of Kentucky.

May 12, 1961.

Baird & Hays, Pikeville, for appellant.

Clark Pratt, Hindman, for appellees.

MONTGOMERY, Judge.

The Knott County Board of Education appeals from a judgment affirming the Workmen's Compensation Board's award in favor of Dingus Williams for total and permanent disability. It is urged that appellee's claim is not compensable because the claimed disability is not the natural and direct result of a traumatic injury by accident and that there is no competent evidence of probative value that the appellee is totally and permanently disabled.

Dingus Williams, age fifty-two years, was in his eighth year of employment as a janitor with the Knott County Board of Education. His duties as janitor consisted of sweeping, firing a furnace, and doing whatever was necessary to clean and maintain the school buildings. He had been a farmer and stonemason and had always earned his living by manual labor. Appellee had had no previous illness or injury.

On August 15, 1957, appellee, assisted by Foster Calhoun, was engaged in cleaning the overhead steel beams in the Hindman High School gymnasium and in cleaning the electric light globes and changing the bulbs in them. To reach the beams, which were 17 or 18 feet above floor level, appellee used a long wooden extension ladder which he and Calhoun moved from place to place. He said "it was pretty strenuous to carry the ladder * * * about all two men could do to carry it around * * *."

Appellee said that while standing on the ladder reaching upward and out to his right to replace a bulb "something struck me in my * * * right leg and hip, and it just went completely numb and dead on me." When he came down off the ladder, he complained to his helper. Appellee said that he "didn't do any more climbing that evening * * * just piddled around * * * mostly."

Appellee said that he suffered from pain in his back, right hip, and right leg which grew worse and interfered with his rest at night. He tried to work at his job for about two months before he "had to go in and give up." Calhoun's testimony corroborated appellee's statement concerning the circumstances of his injury, his pain and suffering, and his inability to work. The principal and the coach at the school also testified to his inability to perform the customary duties of his employment and to his pain and suffering.

After appellee had been in bed several days suffering from his injury, he received medical treatment. Upon the recommendation of his local doctor, appellee went to Dr. Carl M. Friesen, an orthopedic surgeon, in Lexington. He was later operated on by Dr. Ralph J. Angelucci, a neurosurgeon.

Dr. Friesen's diagnosis was "extradural nerve root pressure lower lumbar, probably due to herniated intervertebral disc, lower lumbar right." He described the surgery as "uneventful and quite satisfactory," but gave no opinion as to appellee's disability.

On November 23, 1957, Dr. Angelucci removed appellee's "disc protrusions from right at L-5 interspace." Based on a July 28, 1958 examination, Dr. Angelucci said that the result obtained from the operation was good and that appellee had a 10% permanent partial disability. His opinion seemed to have been influenced by his observation of callouses on the hands of appellee which appeared at that time to have been of recent formation.

Appellee testified that he tried to work after his operation but was unable to perform manual labor as he had previous to the injury. He said that the operation and treatment relieved the worst of the pain but did not eliminate it.

Dr. T. R. Miller, an orthopedic surgeon, examined appellee on April 24, 1958. He found a scar which indicated the "simple removal of the disc." He said that the rupture of a disc "may occur with no specific history of injury, probably on a basis of degeneration, or they may occur with a specific injury, usually associated with the position in which one happens to be, ordinarily this is a position of having the back bent and twisted at the same time." He was unable to say whether the disc condition was due to degeneration or injury but said it was possible to get a ruptured disc under the circumstances described by appellee. He said that appellee at the time of his examination had an approximate 50% impairment of the ordinary functions of the body as a result of the ruptured disc and operation and that appellee was unable to "perform heavy manual labor.".

■ Traumatic injury by accident has recently been thoroughly discussed. North American Refractories Co. v. Jackson, Ky., 346 S.W.2d 10 (decided April 28, 1961); Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (petition for rehearing overruled April 28, 1961). The controlling principles are set forth in those cases and the cited cases therein, including Terry v. Associated Stone Company, Ky., 334 S.W.2d

926. No useful purpose would be served by further discussion of their application. Under the principles set forth therein, appellee's injury was compensable.

Appellant contends that there is no competent evidence of probative value to sustain the finding as to total and permanent disability. It is argued that the medical testimony fixed the disability at 10% or 50% permanent partial and that such testimony is controlling. The correct rule appears in Baier v. Schnell, Ky., 323 S.W. 2d 587, 590, as follows:

" * * * as the basis for an award for permanent partial disability, there must be some evidence showing to what extent the claimant is 'disabled.' This is not always exclusively a matter of medical testimony; under some circumstances the testimony of the claimant himself may be competent to show disability. See United Electric Coal Co. v. Adams, Ky., 299 S.W.2d 246; City of Olive Hill v. Parsons, 306 Ky. 83, 206 S.W.2d 41. In many cases, particularly those involving internal injuries, medical testimony may be the only competent evidence to prove the actual bodily condition of the employe, or the respective percentages of his bodily condition that are attributable to injury by accident and to a preexisting disease or previous injury, as in Contractors Service & Supply Co. v. Chism, Ky., 316 S.W.2d 840; but once the bodily condition has been established, lay testimony may be competent on the question of the extent of disability that has resulted from the bodily condition. Of course caution should be employed in giving weight to purely subjective evidence, as where the employe testifies to a degree of disability much greater than by the medical testimony he should be expected to have."

The testimony of appellee and other lay witnesses who observed him was competent probative evidence of his disability, and when taken with other evidence as to injury and disability is sufficient to support the Board's finding.

Judgment affirmed.

STEWART, J., dissents.