**RUBY CONSTRUCTION COMPANY, Inc., Appellant,**

v.

**Pink CURLING, Jr., and Kentucky Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

March 20, 1970.

James L. Hardy, Burke B. Terrell, Terrell, Schultzman & Hardy, Paducah, for appellant.

James H. Warren, Fulton, H. W. Roberts, Jr., Clinton, for Pink Curling, Jr.

NEIKIRK, Judge.

Appellee Pink Curling, Jr., an employee of appellant Ruby Construction Company, Inc., was awarded compensation for total permanent disability by the Workmen's Compensation Board. On appeal to the circuit court the award was affirmed. The employer has appealed from the judgment.

Curling, a forty-one-year-old man, was employed as a carpenter. He sustained under compensable circumstances a traumatic injury diagnosed as a herniated disc. Later, the intervertebral disc at L-5 interspace was removed by surgery. When appellee Curling was released from the hospital, the doctor told him that he could do light work but not to do heavy lifting or engage in activities that require a great deal of bending. At the time of the hearing before the Board, Curling had not sought any employment.

The employer insists that there was not sufficient probative evidence to support the award.

Curling detailed at the hearing his great physical incapacities and his total disability. His wife's testimony substantiated his claims. The only other witness was Dr. Joseph Miller, a neurosurgeon at Baptist Hospital, Memphis, Tennessee. Dr. Miller had performed the operation.

In rating Curling's disability, Dr. Miller stated in part:

"Q Doctor, from your observation and considering your opinion as to his condition, do you have an opinion as to his percentage of disability to perform the duties of a carpenter as I have described it to you or as you know the job of a carpenter?

A Yes.

Q What is your opinion as to his percentage of disability to perform that type of work?

A I would like to say that I rate disability on the basis of comparing the patient with a normal individual. It has nothing to do with his ability to perform work. In other words, a banker or baseball player, a farmer or a lawyer would have the same disability rating. The percent rate is not in any way in consideration of what the man can or cannot do. On that basis, I have rated him as ten percent permanent partial disability of the body as a whole.

Q This is as you say strictly a clinical analysis without any consideration of his job or experience?

A That is correct.

Q In your opinion can he today perform the duties of a carpenter?

MR. HARDY: Object.

A This requires some speculation, in that we have operated on carpenters or farmers and many of them have returned to their work. However, we have advised that they not do the extremely heavy activities or bending that might be required in these jobs. If this man was told that he had to return to a job without restrictions, I would advise him not to do it.

Q And that condition which you have described and your advice, would that apply permanently?

A Yes."

The only other evidence as to occupational disability was the testimony of Curling and his wife. Appellant would have us discount this proof and determine that such evidence, standing alone, is not sufficient to support the award.

We said in Mary Helen Coal Corp. v. Hensley, 237 Ky. 348, 35 S.W.2d 533:

"Though there was no surgical evidence introduced corroborating the testimony of the claimant that he was injured as stated, and that such injury incapacitated him from labor, nevertheless his testimony is deemed to be sufficient to support the decision of the board."

This holding was later approved in Hardwood Sales Company v. Meeks, 286 Ky. 500, 151 S.W.2d 406.

Appellant urges that we should overrule Mary Helen Coal Corp. v. Hensley, supra. We decline.

█ If the only evidence as to occupational disability is the testimony of the claimant, the Board, as a fact-finding agency, nevertheless is justified in reaching a determination based on such evidence. Its position is that of a jury. Ferrell v. A. O. Smith Corporation, Ky., 445 S.W.2d 121.

█ The Board is not confined in its determination of the extent of a claimant's occupational disability to the findings of doctors as to percentage of functional disability. The Board may consider other evidence, including testimony of the claimant, as to the claimant's ability to perform the tasks essential to his occupational classification. It is the duty of the Board to determine a claimant's occupational disability from all of the evidence. Whitis v. Southern Belle Dairy, Inc., Ky., 434 S.W.2d 645; Oaks v. Beth-Elkhorn Corporation, Ky., 438 S.W.2d 482; Young v. Stacy, Ky., 450 S.W.2d 506 (decided November 7, 1969).

Appellant relies on Contractors Service & Supply Company v. Chism, Ky., 316 S.W.2d 840, and Roy Fruehauf, Inc. v. Forrest, Ky., 433 S.W.2d 862, in support of its contention that the only witness competent to evaluate the extent of disability is a member of the medical profession.

In Contractors Service & Supply Company, supra, the claimant had a pre-existing latent infirmity. We said that in such a situation it may be necessary to determine the previous diseased condition in order to *apportion* the percentage of incapacity attributable to the accident. We said:

"* * * We conclude under the circumstances that the only competent witnesses to prove the decisive fact involved must necessarily be members of the medical profession."

In Roy Fruehauf, Inc., supra, the claimant, during his convalescence from a compensable back injury, suffered either a cerebral thrombosis or an infarct involving the left cerebral hemisphere. According to the doctors, the stroke and resulting paralysis were wholly unrelated to claimant's back injury. The doctors' testimony as to the scientific medical findings under such circumstances are conclusive as to functional impairment.

The cases cited by appellant are thus distinguishable and do not support the legal posture that the Board cannot consider lay testimony to determine the *extent* of occupational disability but should rely solely on members of the medical profession to apportion disability.

For us to hold otherwise would relegate all claimants in workmen's compensation cases to the magnanimous findings, or to the lack of magnanimity, of the many practicing, examining, and surgical practitioners attending the hurts and wounds of workmen and working women. We are not blind to the fact that we are living in a computerized society where numbers, by some people, sometimes count for more than individual identity, but we do not believe that medical science has advanced to the point that it can be determined that a well-trained physician or surgeon can ascertain feelings and pain in percentage points. We adhere to the position that a claimant certainly can know as a fact if he is in pain, as well as he can know when it hurts to perform certain physical activities. He is entitled to tell, and our court will give credence and weight to such testimony. Cf. N. G. Gilbert Corp. v. Russell, Ky., 451 S.W.2d 613 (decided March 20, 1970).

The judgment is affirmed.

All concur.