**N. G. GILBERT CORPORATION,**
**Appellant,**

**v.**

**Robert RUSSELL and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

March 20, 1970.

James M. Graves, Larry L. Johnson, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Billy Todd Cheshire, James C. Hudson, Frankfort, for appellees.

DAVIS, Commissioner.

The Workmen's Compensation Board granted Robert Russell an award providing for benefits based on permanent total disability. His employer, the appellant, attacked that ruling in the circuit court where it was affirmed. This appeal challenges the propriety of the circuit court's ruling. The narrow question as formulated and stated in appellant's brief is: "Whether a compensation claimant may undertake to make a prognosis concerning his own injuries?" The claimant contends that the question is not aptly put and that there was no effort by the claimant to make a prognosis concerning his own injuries.

For about seventeen years the claimant, Robert Russell, had pursued the occupation of trimming trees. He described his occupational classification as "top tree surgeon" or as "journeyman" in that type work. The employer does not contend that Russell's occupational classification is anything other than "top tree surgeon."

On February 26, 1968, while Russell was working high in a tree in the course of his

employment, his pruning shears, which were hanging on a limb above him, fell and cut his left arm about five inches above the wrist inflicting a laceration of 1.5 centimeters. Dr. Harold E. Kleinert treated the injury on the day of its occurrence. The procedure required about two hours, but Russell was able to leave the hospital without confinement there following the operation.

Dr. Kleinert described the condition he found, saying:

"His wound was explored and he was found to have a laceration of the flexor carpi radialis longus and this was incomplete, an incomplete laceration of the extensor pollicis brevis and an essentially complete laceration of the abductor pollicis longus. The sensory branch of the radial nerve was lacerated."

The doctor explained that the medical terms used by him related to injury to three tendons and the radial nerve in the left forearm. He said that the tendons and nerve were repaired by him, and Russell was permitted to leave the hospital with his hand and forearm in a splint so that his thumb was abducted in an extension.

Dr. Kleinert testified that he examined Russell on March 4, 21, and 28 and on April 4 and 18, 1968, on which latter date he found Russell to have full range of motion of his thumb. The doctor informed Russell that he could return to light work on April 22, although he noted that as of April 18 Russell had a tenderness or hyperesthesia over the skin area supplied by the radial nerve. The doctor said that it was too early on April 18 for the radial nerve to have been healed. He had directed Russell to return in three weeks, but Russell had not done so; when Dr. Kleinert gave his deposition on July 23, 1968, he had not seen Russell since April 18.

With respect to the injured tendons, Dr. Kleinert observed that Russell had full range of motion on April 18 and that he felt

that Russell "was going to completely recover." Concerning the effect of the injury to the radial nerve, Dr. Kleinert said that Russell evinced numbness on the dorsal radial surface of his left hand. When asked whether it was "highly probable" that Russell would never experience complete recovery from the nerve injury, Dr. Kleinert responded:

"Yes, I would tend to agree with that. He is thirty-eight and older people don't recover, don't regenerate nearly as well as younger people. The radial nerve is kind of a bad actor, very often there is * * * increased sensation of the radial nerve."

In further explanation of his estimate of Russell's condition, Dr. Kleinert deposed:

"When we saw him in April, we allowed him to return to light duty. Of course, I can only speculate on the answers that I give at this point. When one has a lacerated radial nerve which is pure sensory nerve, the lack of sensation of the dorsal surface of the hand, this is the base of the index finger and thumb on the top side of the hand which in itself is not a great deal of disability unless it should be associated with pain and if one would get up forty feet high and bump his hand and have exclusive (sic) pain as a result of striking his hand, then that would be an unsafe thing to do."

Dr. Kleinert said that it is not medically possible to be certain of complete recovery from a lacerated nerve injury, and he added that he regarded the nerve impairment as Russell's only prospect of permanent partial disability.

On July 3, 1968, Russell testified and stated unequivocally that he was then completely unable to work as a tree surgeon. He explained that his left hand remained numb and that he experienced extreme and painful sensitivity at the site of the scar on his arm. Dr. Kleinert indicated the possibility of a neuroma at that place.

In short, Russell testified that his left hand was substantially useless insofar as climbing and gripping were concerned.

On September 9, 1968, Russell was examined by Dr. L. H. Segerberg, a neurosurgeon. Dr. Segerberg found excellent function of the muscles in Russell's hand and observed that Russell was "well able to bend it to a perfectly normal range." Dr. Segerberg found no evidence of disfunction of the tendons, stating: "And the only residual he had at the time I saw him was the involvement of the superficial radial nerve with a neuroma in the scar." The doctor was asked to estimate the extent of permanent impairment, if any, caused to Russell by the injury, taking into account the duties of his occupation as a tree trimmer. His response was:

"Well, I indicated in my report that I felt his permanent impairment, understanding all these things would certainly not consist of more than five percent to the body as a whole."

Dr. Segerberg expressed his opinion that Russell could return to work as a tree trimmer, although he recognized that the radial nerve might not regenerate.

With the record in this posture, the Board made its award on February 17, 1969, based on its finding of fact that: "Plaintiff is permanently and totally disabled to work as a tree trimmer by reason of his injury on February 26, 1968."

It will be recalled that Russell testified that as of July 3, 1968, he was completely unable to perform his work as a tree trimmer. Dr. Segerberg related that in his view Russell could perform such duties as of September 6 when he examined him. Both Dr. Kleinert and Dr. Segerberg recognized that Russell might well have a permanent, partially disabling injury. Dr. Kleinert made no attempt to fix a percentage of functional disability, but Dr. Segerberg expressed the estimate of a five-percent permanent impairment to the body as a whole.

It is well settled that the Workmen's Compensation Board has the prerogative of determining from the evidence as a whole whether, and to what degree, physical impairment results in occupational disability. Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78, 80; Fraley v. Rusty Coal Company, Ky., 399 S.W.2d 479; and Congleton Bros., Inc. v. Farmer, Ky., 399 S.W.2d 722. The rationale of cases such as Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, and Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905, governs this case, since the proceeding was commenced before the effective date of Osborne v. Johnson, Ky., 432 S.W.2d 800. The Board had substantial evidence to support its finding that Russell's permanent physical impairment, even though consisting of only five-percent impairment to the body as a whole, resulted in total occupational disability with respect to his occupation as a tree trimmer.

Appellant's reliance upon Yocum Creek Coal Company v. Jones, 308 Ky. 335, 214 S.W.2d 410; Contractors Service & Supply Company v. Chism, Ky., 316 S.W.2d 840; and Baier v. Schnell, Ky., 323 S.W.2d 587, is misplaced. It was stated in the Yocum case:

"A claimant, like any lay witness, may not undertake to make a prognosis, but he may state facts concerning his condition and these facts may be of such a nature as to enable the Board to determine the extent and duration of the disability even in the absence of medical testimony. (Citations omitted.)" Id. 214 S.W.2d at 412.

The claimant's position here is stronger than was true in Yocum, since he stated facts concerning his condition not "in the absence of medical testimony" but in corroboration of medical testimony. The claimant's evidence that he was unable to perform his duties as a tree trimmer was competent insofar as the extent of his disability was concerned. The duration of that disability was characterized as perma-

nent by medical evidence, even though one of the doctors who expressed that opinion disagreed with the claimant as to the extent of the disability.

The correct result was reached in Contractors Service & Supply Company v. Chism, Ky., 316 S.W.2d 840, where there was a problem of apportionment respecting a prior non-disabling disease condition and a subsequent injury. Obviously, the lay claimant had no expertise which could enable him to express a qualified opinion touching that medical question. The case is not authority, however, for the proposition that a claimant is disqualified from relating the disabling effect of an injury.

In fact, that was the construction placed on Contractors Service & Supply Company v. Chism, supra, in Baier v. Schnell, Ky., 323 S.W.2d 587, in which the court recognized that testimony of the lay claimant may be competent to show disability in some circumstances. A caveat was noted as to the weight due such testimony when relating to "purely subjective evidence, as where the employe testifies to a degree of disability much greater than by the medical testimony he should be expected to have." We are not able to say that the Board disregarded that caveat in this proceeding. Cf. Ruby Construction Co., Inc. v. Curling, Ky., 451 S.W.2d 610 (decided March 20, 1970).

In these circumstances the Board acted within the range of substantial evidence in making its award, and its finding may not be disturbed. Cf. Knott County Board of Education v. Williams, Ky., 348 S.W.2d 715, in which the court affirmed an award for total permanent disability despite the fact that the range of disability expressed by medical witnesses was from ten percent to fifty percent permanent partial disability.

■ Appellant urges that the proceeding should be remanded with directions to reopen. Procedure for reopening is afforded by KRS 342.125. The forum for that relief is by action before the Board, not in this court.

The judgment is affirmed.

HILL, C. J., and MILLIKEN, NEIKIRK, PALMORE, REED, and STEINFELD, JJ., concur.