Clarence ESLINGER, Claimant,

v.

COLE GRAIN COMPANY, Employer,

and

State Insurance Fund, Insurance Carrier.

No. 56533.

Court of Appeals of Oklahoma, Division 1.

May 4, 1982.

Rehearing Denied May 25, 1982.

Approved for Publication by the Supreme Court Oct. 29, 1982.

Don Person, Muskogee, for claimant.

Fred Nicholas, Jr., Sam Hill, Michael E. Utter, Oklahoma City, for employer and insurance carrier.

WILSON, Presiding Judge:

The issue in this proceeding is whether the Workers' Compensation Act of 1977 now authorizes the court to order an award for permanent total disability upon a finding of total economic disability resulting from an accidental personal injury to claimant's left arm causing a 100 percent impairment to that limb.

The trial judge entered such an order; it was affirmed on appeal to a three-judge review panel. The employer and its insurance carrier now challenge the order in this proceeding.

Contending that an award for total permanent disability cannot be made where a member such as an arm is totally impaired, employer and insurer cite cases decided prior to the 1977 Act.[1] In these cases, it was held that an award for the loss of a single major member, for which the schedule of compensation provided an award of a certain number of weeks of benefits, closes the door to further inquiry into the loss of earning power and precludes an award of additional compensation for disability to the body as a whole.

Employer and insurer argue that these pre-1977 cases were predicated on the Act's prior schedule of compensation section, 85 O.S., § 22, which provided that "the compensation for the foregoing specific injuries shall be in lieu of all other compensation." And, they stress that in the 1977 Act, the Legislature amended § 22 to read:

The compensation for the foregoing specific injuries shall be in lieu of all other compensation except the benefits provided in Section 14 [Medical attention]

of this title and Section 19 [Rehabilitation and job placement services] of this Act.

A new factor in this problem, however, arises from another provision in the 1977 Act, 85 O.S.Supp.1977, § 3, which supplies definitions to be used in the Workers' Compensation Act. In this section we find:

(12) "Permanent total disability" means incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee is or becomes physically suited and reasonably fitted by education, training or experience; loss of both hands, or both feet, or both legs, or both eyes, or any two (2) thereof, shall constitute permanent total disability.

Shedding some light on the issue is an article by the Honorable Chris Sturm, "The Workers' Compensation Act of 1977," 3 Okla. City U.L.Rev. 1 (Fall, 1978). This article covers the legislative history of the 1977 Act, as well as many specific points. In discussing permanent total disability on page 12, the author writes:

The Act provides that *permanent total disability* means "incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee is or becomes physically suited and reasonably fitted by education, training or experience. . . ." This definition abandons the theory of ordinary manual or mechanical labor and focuses only upon the purely economic aspects of whether the employee has been removed completely from the job market by his injury. The important words in the definition appear to be "any wages in any employment." But these words are immediately followed by phrase that may be equally significant. This latter phrase requires that the employee be *both* physically suited and reasonably fitted to whatever employment one may consider. This introduces, for the first time in Oklahoma, the idea of rehabilitation by providing in the Act that the employee

1. *Mudge Oil Co. v. Wagnon,* 193 Okl. 466, 145 P.2d 185 (1944); *J.E. Trigg Drilling Co. v. Daniels,* 193 Okl. 644, 145 P.2d 944 (1944); *Trans-* *con Lines v. Brotherton,* 438 P.2d 935 (Okl. 1969); *Clark v. Keller Williams Furniture Manufacturing,* 456 P.2d 541 (1969).

may at some future date become suited or fitted for an employment even though he is not so suited or fitted at the time his claim is heard by the court.

A point worth noting about the present definition of permanent disability is that it provides that the loss of certain combinations of members of the body shall constitute total disability only "in the absence of conclusive proof to the contrary." Some legislators expressed concern that an injured employee who had lost both feet, hands, legs, arms, or eyes, or any two of those members, should not be limited to the benefits for scheduled member losses, nor should he have to prove total incapacity to earn any wages before being entitled to total permanent disability benefits. This type of injury was said to be uncommon and deserving of special treatment. For this reason, the Act deleted the above quoted provision, thereby providing that the combination of such losses shall in all cases constitute permanent total disability regardless of the earning capacity of the employee.

We find further guidance in the comprehensive discussion and collection of recent cases from other jurisdictions and treatises on the subject in the dissenting opinion of Judge Station in *Rork v. Szabo Foods,* 426 N.E.2d 1379, 1385 (Ind.App.1981):

Other jurisdictions adhere to the enlightened view that a claimant's physical impairment is merely one factor in considering a claim for total permanent disability benefits. The prevailing rule is being reiterated constantly in cases from other jurisdictions, such as *Odom Construction Co. v. United States Department of Labor* (5th Cir.1980), 622 F.2d 110, 115, *cert. denied* (1981), 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614, in which the court held that the determination of permanent disability under the Longshoremen's and Harbor Workers' Compensation Act "must be based not only on physical condition but also on other indicia such as age, education, employment history, rehabilitative potential, and availability of work that the claimant can do." *See also, Henderson v. Winchester*

(1980), Ark.App., 268 Ark. 710, 594 S.W.2d 866; *Cohn v. Haile* (1979), Ark. App., 267 Ark. 734, 589 S.W.2d 600; *Inland Robbins Construction Co. v. Industrial Commission* (1980), 78 Ill.2d 271, 35 Ill.Dec. 778, 399 N.E.2d 1306; *Ruby Construction Co. v. Curling* (Ky.1970), 451 S.W.2d 610; *Whitaker v. Church's Fried Chicken, Inc.* (1980), La., 387 So.2d 1093; *Jensen v. Zook Bros. Construction Co.* (1978), 178 Mont. 59, 582 P.2d 1191; *Matter of Compensation of Morris* (1981), 50 Or.App. 533, 623 P.2d 1118; 2 Larson, *Workmen's Compensation Law* §§ 57.51, 57.61 (1980); 3 Larson, *supra,* § 79.53, at 15–271 (1980). . . .

In the case at bar, the thirty-three-year-old claimant Clarence Eslinger had been employed by Cole Grain Company about six years when he was injured at work. He was cleaning out a sweet-feed mixer with his left arm inserted into the mixer's hole when his helper started the machine running. Claimant's arm was thus mangled and was undisputedly totally disabled.

Clarence's testimony demonstrated that he had finished seven-and-a-half years of school with "not too good" grades, and that he could neither read nor write. Never having learned to drive a car, he had walked back and forth to work. Before taking the job with Cole Grain Company, he had done spot labor work. He lived with his sister and brother-in-law. He had no special training for anything other than manual labor. Without the use of his left arm, he could not do things like tie his shoes, though he could manage to dress himself. He had not had a job since the accident.

Three medical reports were received in evidence. Dr. C, in a report to the insurance carrier, wrote that in calculating the disability of claimant under the AMA Guides, he found the disability of the upper extremity at 100%, which converts to 60% impairment of the whole man. He continued:

In addition, Mr. Eslinger has perceptual and conceptual difficulties, which will

make it difficult to retain him in anything other than heavy manual labor field.

Dr. A's report stated:

Since this is a scheduled member and the acts take precedence to the Guides in the Evaluation of Physical Impairment, it is my opinion that as a result of the multiple injuries to the left fingers, hand, wrist, forearm, upper arm and shoulder and clavicle, it is my opinion that Clarence E. Eslinger has a total physical impairment of the left arm as the result of an accident incurred on the 22nd of September, 1980 [sic] at the Cole Grain Company in Muskogee, Oklahoma. This in turn would be a 50% of total physical impairment, to the whole man as the result of the injury to left arm and shoulder incurred as the result of an accident on the 22nd of September, 1978 at the Cole Grain Company in Muskogee, Oklahoma. However, due to the fact that not only is the entire arm disabled and impaired but due to the fact that there was a fracture to the left clavicle and a nerve injury with atrophy of the musculature in the region of the left scapula, it is my opinion that Clarence E. Eslinger has a 65% of total physical impairment to the whole man as the result of these injuries incurred as a result of an accident on the 22nd of September, 1978, at the Cole Grain Company in Muskogee, Oklahoma. However, due to the lack of education, inability to drive an automobile, lack of any skills, and slow mentality, it is my opinion that Clarence E. Eslinger has a total physical impairment to the whole man as a result of an accident incurred on 22nd of September, 1978 at the Cole Grain Company in Muskogee, Oklahoma.

The trial judge, recognizing the issue, took the case under advisement. A few weeks later, he entered the order awarding claimant compensation, articulating his reasoning as follows:

-5-

THAT as a result of said injury, claimant sustained 100 per cent impairment to the LEFT ARM, trial court, however, finds that the claimant is totally and permanently disabled and entitled to lifetime benefits at the rate of $60.00 per week.

-6-

THAT it is the intention of the 1977 Workers' Compensation Act not only to compensate an employee for any physical impairment he may have suffered but also for any permanent total economic disability suffered.

-7-

Economic disability takes into account:
(a) Claimant's education;
(b) Pre-existing impairments to the brain and body condition;
(c) Claimant's vocational skills lost and his ability to retrain to other skills;
(d) Claimant's ability to take care of his physical needs and functions in order to be employable;
(e) Claimant's ability to earn a livelihood.

We are convinced that the trial judge was correct in this order and that the three-judge panel was correct in affirming it. The facts of this case support the finding that claimant Clarence Eslinger suffered total economic disability as a result of the 100% disability of his injured left arm. This finding authorized an award based on total permanent disability under the Workers' Compensation Act of 1977.

ORDER SUSTAINED.

REYNOLDS and BOX, JJ., concur.