RENDERED: AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-000172-WC

AVI FOOD SYSTEMS                                                    APPELLANT


PETITION FOR REVIEW OF A DECISION
v.                OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-15-72461


DELORSE BREEDEN;
HON. CHRIS DAVIS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: AVI Food Systems (AVI) petitions for review of an

opinion of the Workers' Compensation Board affirming an opinion and order of

the Administrative Law Judge (ALJ). The ALJ held that Delorse Breeden, a

former employee of AVI, was entitled to receive permanent total disability benefits for a work-related injury to her back. AVI argues that the ALJ ignored evidence that Breeden's disability was attributable in part to a non-work-related knee replacement and that she was capable of working in a lighter-duty position. Having reviewed the record and the applicable law, we affirm the opinion of the Board.

Breeden was fifty-six years of age at the time of her final hearing in July 2019. She had completed the eleventh grade of high school and taken some GED courses but had not obtained a GED. Before beginning work at AVI, she was employed as a fast food restaurant manager, a corrections worker, and a factory worker. She was hired by AVI in September 2014 as a route driver, which required her to report to a warehouse at 4:00 a.m., load a truck with drinks and food, and drive to various locations to restock vending machines. She used a dolly to load and unload the truck. Breeden estimated the job required her to lift between thirty and thirty-five pounds.

In March 2015, the regular box truck Breeden drove broke down, and she was assigned to a Ryder truck which was the largest truck she had ever driven. According to Breeden, she now had to lift the cases of soda and food above her head to place them in the back of the truck. She also had trouble with the back door which she had to pull extremely hard to close.

On May 12, 2015, Breeden began to experience lower back pain after opening and closing the back of the Ryder truck several times. She was able to complete her shift but the pain increased that evening and she called her supervisor at 2:30 a.m. to report she would not be at work because of a back injury. She went to the St. Elizabeth Hospital emergency room where she was diagnosed with likely chronic minimal anterolisthesis of L4 relative to L3 and L5. X-rays indicated that she had no acute dislocation or fracture. She was released with a diagnosis of work-related lumbar strain. She was prescribed medication and referred to physical therapy.

On October 20, 2016, Breeden underwent low back surgery for lumbar region intervertebral disc replacement. The surgery was complicated by a hematoma four days later that necessitated a second surgery. According to Breeden, the surgery helped her but she continued to experience back pain.

Breeden returned to work at AVI in a "CSA" position following her back surgery. The CSA position entailed stocking vending machines with soda and food from an on-site storage closet. It required driving only a personal vehicle, no loading or unloading of trucks, and lighter lifting. AVI's branch manager, Steve Crisp, testified in his deposition that soda cases weighing thirty-two pounds still had to be moved but could be broken down instead of being lifted all at once, and a cart was used to transfer the products from the storage closet to

the vending machines. He explained that Breeden may have been slower than the other CSA workers but he still considered her a good employee for the job.

Breeden also experienced ongoing left knee pain for which she sought treatment in 2015. In December 2017, she underwent left knee meniscus surgery and eventually had a total left knee replacement on April 11, 2018. She was not pleased with the outcome of the surgery, noting that her knee pain was worse following the replacement.

Breeden's last day as a CSA was on April 10, 2018, the day before her knee surgery, and she never returned to work at AVI. She subsequently filed an application for resolution of a claim for the low back injury.

In support of her claim, Breeden filed notes from Dr. Brian Braithwaite, her pain management physician, who noted that her low back condition continued to worsen from the date of onset, May 12, 2015. He prescribed opiate medication and a spinal cord stimulator trial. The spinal cord stimulator proved not to be effective.

Breeden filed a report from Dr. Jeffrey Fadel, who diagnosed her with failed back syndrome stemming from her work-related low back injury and surgeries, lumbar facet arthritis aroused by the work injury, and radiculopathy of the L5 nerve root into the left lower extremity. He assessed a 13% impairment rating pursuant to the 5th Edition of the AMA Guides to the Evaluation of

Permanent Impairment (AMA Guides). He opined that Breeden had reached maximum medical improvement and should avoid lifting or carrying more than twenty pounds and pushing or pulling more than forty pounds. He also advised her to avoid repetitive twisting, bending, or rotating of her lumbar spine. He concluded that these restrictions would not allow her to return to work as a route driver.

A functional capacity evaluation (FCE) was performed by NovaCare Rehabilitation which found that Breeden did not have the physical capacity to work as a route salesperson but did have the capacity to perform light-duty work. Light work was defined in the FCE according to the U.S. Department of Labor guidelines as exerting up to twenty pounds of force occasionally, and/or up to ten pounds frequently, and/or a negligible amount of force constantly.

AVI filed the office notes of Dr. Jonathan Spanyer, who performed Breeden's knee surgery. On August 16, 2018, about four months after the surgery, Dr. Spanyer observed that she was functioning well but was complaining of ongoing pain of unclear etiology. He described her range of motion as acceptable with some stiffness, and allowed her to return to work with no knee restrictions. When he saw her several months later, on December 4, 2018, she reported her left knee pain was worse than before the surgery and she did not believe she could

return to work. Dr. Spanyer recommended conservative treatment with no additional surgery.

Dr. Benjamin Wilson of U.K. Healthcare also evaluated Breeden's left knee and similarly noted that she complained it was worse than before the surgery. He likewise did not recommend additional knee surgery.

Dr. Ellen Ballard evaluated Breeden on behalf of AVI on October 10, 2017. She noted that Breeden had undergone two lumbar surgeries and diagnosed Breeden with low back pain with left leg radicular symptoms. She found Breeden had reached maximum medical improvement (MMI), assessed an 11% impairment rating pursuant to the AMA Guides, and advised Breeden to avoid lifting over twenty pounds and repetitive bending or stooping. On November 13, 2018, Dr. Ballard performed another evaluation and noted that Breeden had undergone two knee surgeries since the last evaluation. She restated her prior conclusion that Breeden had reached MMI by October 10, 2017, and has an impairment rating of 11%.

Dr. Ralph Crystal performed a vocational evaluation of Breeden on April 5, 2018. Breeden was not working or looking for work at that time. She told him she did not believe she could perform any of her past work or concentrate sufficiently to obtain a GED. His testing showed she functions at the fourth or fifth grade level in reading, spelling, and mathematics. Dr. Crystal found there was

no indication Breeden could not complete a normal workday or work week. He opined there are numerous jobs she could perform with her restrictions, either through direct entry or on-the-job training. He concluded that she was not disabled from employment and did not necessarily have a loss of earning capacity.

Breeden testified that she did not feel well while employed in the light-duty CSA position at AVI following her back surgeries. She explained that when she got up in the morning, her pain level would be a two or a three but by the end of the day it would have risen to a nine or a ten and she was unable to perform any substantial physical activity when she got home. She further testified that she believed her back condition had worsened since April 2018 when she left AVI and there was no way her back would hold up if she returned to the CSA position.

Relying on the opinions of both Dr. Ballard and Dr. Fadel that Breeden should not lift over twenty pounds, and Crisp's testimony that a route driver has to lift thirty-two pounds, the ALJ found that Breeden could not return to her prior work as a route driver. The ALJ noted the limitations on bending, stooping, standing, and twisting recommended by Dr. Fadel and Dr. Ballard, and the FCE conclusion that she can work in a light-duty category but no higher, to further conclude that she could not return to any of her prior employment as a fast food worker, corrections officer, or factory worker. He discounted the opinions of Dr. Crystal and relied in part on Breeden's own testimony that she cannot return to

any type of employment. He emphasized her limited education and lack of transferable skills, and found little chance that at her age, educational level, and restrictions that any job retraining would realistically result in any actual job opportunities. The ALJ found insufficient evidence that her knee problems and knee surgery caused any occupational disability. The ALJ found that Breeden was permanently totally disabled as a result of her work injury, assigned a 13% impairment rating based on the rating provided by Dr. Fadel, and awarded permanent total disability (PTD) benefits and medical benefits.

AVI filed a petition for reconsideration. The ALJ denied the petition except as to a minor issue regarding the compensability of some medications. The Board subsequently affirmed the opinion and order of the ALJ, holding that the ALJ had performed the correct analysis, and the award of PTD benefits was supported by substantial evidence. This appeal by AVI followed.

As the claimant, Breeden bore the burden of proving the elements of her claim. *Trevino v. Transit Authority of River City*, 569 S.W.3d 400, 403 (Ky. 2019). When, as in this case, the party with the burden of proof is successful before the ALJ, "the issue on appeal is whether substantial evidence supported the ALJ's conclusion. Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable

men." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018) (internal quotation marks and citations omitted).

Upon review, we "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

First, AVI argues that the ALJ failed to consider the effect of Breeden's non-work-related knee surgery and consequently erred in attributing her entire disability solely to her low back injury. It questions the ALJ's reliance on the opinion of Dr. Fadel, pointing out that Dr. Fadel's recommendations regarding work restrictions were made following Breeden's knee replacement surgery and did not specify which restrictions relate specifically to her lower back. Similarly, the FCE was performed after the knee replacement surgery and does not specify which of the recommended restrictions are for the knee and which are for the low back.

We agree with Breeden that AVI is attempting to reargue the merits of the case and alter the weight to be given to different parts of the evidence. She points to other evidence in the record, much of it introduced by AVI itself, that clearly distinguishes between the lumbar injury and the knee problems. For example, the records of Dr. Spanyer, the knee surgeon, indicate he told Breeden

she could return to work with no restrictions following the surgery. Dr. Spanyer noted Breeden's frustration with this recommendation, but opined it was appropriate based on what appeared to be a normally functioning knee replacement that a CT scan revealed was "essentially stable . . . without malrotation or evidence of fracture or dislocation or other concerning features." Dr. Crystal's vocational report stated that Breeden did not require physical work restrictions for her knee and did not have a loss of employability or earning capacity attributable to her left knee. The FCE recognized that Breeden had total knee replacement surgery which continued to give her trouble and that she had applied for Social Security disability benefits after the knee surgery, but found she "does not have a loss of employability or earnings capacity based on her left knee." Although Dr. Ballard's report stated that Breeden would require "other restrictions" relative to the knee, Dr. Ballard did not elaborate on this statement.

AVI argues that the ALJ relied on the totality of the recommended work restrictions, thereby impermissibly inferring they all related to the compensable low back claim. But the ALJ's opinion refutes this argument by addressing the issue of the knee condition directly, stating as follows: "I recognize the fact that the Plaintiff had a total knee replacement after the work injury. She continued to complain about it to her doctors. She did not apply for social security disability until after the knee surgery. However, she is under no doctor's

-10-

restrictions for her knee. There is no evidence, only implication, that the knee has caused any real occupational disability. The implication may be sound and reasonable, but it is not supported by the evidence. Given the weight of the evidence for the low back, I will not carve out any portion of the total disability award for the knee."

In arriving at this conclusion, the ALJ was relying on substantial evidence in the record and acting well within his "sole discretion to determine the quality, character, and substance of the evidence[.]" *Trevino*, 569 S.W.3d at 403 (citation omitted). The ALJ was not required to speculate about whether part of Breeden's disability was attributable to the knee condition.

Second, AVI argues that the ALJ erred in finding that Breeden was incapable of doing any of her prior work and that there was no realistic level of retraining she could complete that would enable her to work again. AVI contends that the ALJ failed to consider that Breeden could continue working as a CSA, which was a bona fide position that met all the recommended work restrictions. AVI points out that Breeden successfully worked as a CSA following her back injury and that Crisp, Breeden's supervisor, testified that the CSA job could be performed within the twenty-pound lifting restriction and various positional restrictions recommended by Dr. Fadel.

An ALJ is required to make "an individualized determination of what the worker is and is not able to do after recovering from the work injury." *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000). "Although the ALJ must necessarily consider the worker's medical condition when determining the extent of his occupational disability at a particular point in time, the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts." *Id.* at 52 (citations omitted). The ALJ is required to consider "factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact." *Id.* at 51.

The Kentucky Supreme Court has also expressly specified that the ALJ may rely on a worker's own testimony in performing this analysis: "A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured." *Id.* at 52 (citation omitted). More recently the Supreme Court reiterated, as noted in the Board's opinion, that "a claimant can certainly know as a fact if he is in pain, as well as he can know when it hurts to perform certain physical activities. He is entitled to tell and our court will give credence and weight to such testimony." *City of Ashland v. Stumbo*, 461 S.W.3d 392, 397 (Ky. 2015) (Barber, J., concurring) (quoting *Ruby Const. Co. v. Curling*, 451 S.W.2d 610, 612 (Ky. 1970)).

-12-

The ALJ found that Breeden is unable to perform the type of work she did before her back injury, due to restrictions on lifting more than twenty pounds, bending, stooping, twisting, sitting, and standing. These restrictions, coupled with her lack of education or training and her own testimony that her pain level increased throughout the day when she was working as a CSA, that her back condition had worsened since she left AVI, and that she would be unable to return to the CSA position, which the ALJ found credible, constitute substantial evidence supporting the ALJ's finding of permanent occupational disability. The ALJ's determination was made well within the fact-finding parameters established by the Kentucky Supreme Court and will not be overturned on appeal.

For the foregoing reasons, the opinion of the Board affirming the opinion and order of the ALJ is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Allison A. Zoeller
Louisville, Kentucky

BRIEF FOR APPELLEE DELORSE BREEDEN:

Scott C. Justice
Louisville, Kentucky