**ADAMS & MULBERRY CORPORATION,**
**Appellant,**

v.

**Milton BOLSTON et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 1, 1972.

James M. Graves, William P. Swain, Boehl Stopher Graves & Deindoerfer, Louisville, for appellant.

Gemma M. Harding, for Special Fund, Dept. of Labor, Robert L. Catlett, Jr., Segal, Isenberg, Sales & Stewart, Louisville, for appellees.

PALMORE, Justice.

This is a workmen's compensation case in which the circuit court sustained an award for permanent total disability assessed entirely against the appellant employer. The claimant and the Special Fund are appellees.

The evidence was amply sufficient to support the finding that the claimant is totally and permanently disabled. For our purposes it may be assumed also that the injury alone would not have produced any degree of permanent disability had it not been for his pre-existing condition. The board-appointed physician (KRS 342.121) found the pre-existing condition to be advanced hypertrophic arthritis, a degenerative condition which this court has held not to be a "disease" within the meaning of KRS 342.120. Young v. Bartley, Ky., 472 S.W.2d 262 (1971); Young v. City Bus Co., Ky., 450 S.W.2d 510 (1970). When a pre-existing condition that is not such a disease and is not actively disabling becomes an active disability through the agency of a work-connected injury the employer alone, which takes the man as it finds him, is liable. Young v. Chapman, Ky., 463 S.W.2d 921 (1971).

The controversy centers on the nature and effect of the condition as it existed prior to the accident. The employer contends that the opinion of Dr. Twyman is the only reliable evidence in that respect,

but the real problem is that the parties cannot seem to agree on what Dr. Twyman actually said. We are unable to accept the employer's contention that he said there was an active disability before the accident.

As we understand his testimony, Dr. Twyman was of the opinion that the claimant had three pre-existing infirmities, (1) varicose veins, (2) a congenital deformity of the back consisting of an abnormal sixth lumbar segment, conducing to a weak back, and (3) a degenerative osteoarthritic condition which he called a "disease" as distinguished from the normal aging process because of its severity or advanced degree in relation to the claimant's age. Dr. Twyman related these conditions to the claimant's ultimate disability as follows (emphasis added):

Q- " . . . . In other words *prior to the accident, that is the subject matter of this case now, what would be your best medical judgment as to the degree of this patient's disability active or manifest disability, if any, that he had prior to this injury?*

A- "This becomes a very fine point in that we have a man here who is admittedly earning a living prior to an injury and yet with a type of injury that should get well easily, he becomes totally disabled. Then you can only conclude that it has to be superimposed upon something that is pre-existing. Now, there [can] be no question in my mind that *this man could perform his duties as well as a man, good, healthy, strong man age twenty-five to thirty-five* [he was 64], and he certainly had a certain amount of disability dormant or indigent [sic] in his body *that was not really manifest until the injury occurred.* Now, considering that the man is a hundred percent disabled now, it would be my judgment that he has half of this due to the underlying disease and half of it due to the fact that he had a poor back to begin with. And I believe that be-

cause he had a good range of motion to his back he really had recovered basically from his injury and he was suffering from pre-existing causes as a final analysis."

While the varicose veins constituted a potential source of trouble, they did not actually result in any difficulty. In answering questions that referred to the congenital lumbar abnormality as a "disability" we do not understand that Dr. Twyman meant to say the man had an actual, active 50% incapacity for work. That, of course, would not have been consistent with what he had already said. Rather, we think, he regarded this condition as a factor that would always have affected his *employability,* had it been disclosed to a potential employer, because it made for a "weak back" and increased his vulnerability to a disabling injury. True, it was not "aggravated" or converted from "latent" to "manifest" by reason of the accident, but we find nothing in Dr. Twyman's evidence to justify a conclusion that without the other 50% (the arthritic condition as aroused by the injury) it would have prevented his continuing to work, for an indefinite period of time depending upon the effects of advancing age, as he had been working immediately before the accident.

The legally significant distinction between the opinions of Dr. Twyman and Dr. Keisler, the board-appointed examiner, was that Dr. Keisler's description of the arthritic condition did not place it in the category of a disease as the term has been construed by this court for purposes of the compensation law, whereas it could be argued that Dr. Twyman's analysis did. The difference is that if the arthritic condition were considered to be such a disease 50% of the disability would have been apportionable against the Special Fund and the other 50% (originating in the congenital abnormality) would have to be borne by the employer alone, whereas pursuant to Dr. Keisler's report, which apparently was accepted by the board, since no part of the pre-existing condition was a disease the

entire liability must be assigned to the employer.

■ It may be that Dr. Twyman, with his more extensive observation of the claimant, was in a better position to analyze and evaluate the medical aspects of the case than was Dr. Keisler. Probably however in every case such a difference exists between or among the medical witnesses. Particularly must this be so with respect to a special examining physician appointed by the board. That is a matter for the board to consider. Only in a flagrant instance could a court be justified in dismissing the report of a qualified and disinterested examiner as lacking probative value.

The judgment is affirmed.

All concur.