William O. WINDCHY (Successor to Robert L. Whittaker), Acting Director of the Special Fund, Appellant

v.

Kathy WRAY; Credence Speakers, Inc.; Thomas A. Dockter, Administrative Law Judge; and Workers' Compensation Board, Appellees

and

Kathy J. WRAY, Cross–Appellant

v.

William O. WINDCHY (Successor to Robert L. Whittaker), Acting Director of the Special Fund; Credence Speakers, Inc.; Thomas A. Dockter, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.

Nos. 95–CA–000005–WC, 95–CA–000211–WC.

Court of Appeals of Kentucky.

Feb. 9, 1996.

Case Modified and Ordered Published by Court of Appeals April 5, 1996.

Judith K. Bartholomew Special Fund, Louisville, for appellant/cross-appellee, Windchy.

Joseph S. Freeland Paducah, for appellee/cross-appellant, Wray.

E. Frederick Straub, Jr., Whitlow, Roberts, Houston & Straub, Paducah, for appellee/cross-appellee, Credence Speakers, Inc.

### OPINION

Before EMBERTON, GUDGEL and HUDDLESTON, JJ.

HUDDLESTON, Judge.

On July 15, 1986, when Kathy Wray was six months pregnant, she fell and injured her back while she was working on an assembly line at Credence Speakers, Inc. Diagnostic tests were not immediately performed because of her pregnancy, but Wray underwent physical therapy and was advised to stay off her feet. Wray experienced no complications in her pregnancy and had a normal delivery in November of the same year. After giving birth, Wray's back pain continued. She sought further treatment and was diagnosed with acute low back strain. As a result, Wray had surgery for a herniated disc at the L5 level in her lumbar spine in August 1987. Wray underwent a second operation in January 1988 for a recurrent disc and scar tissue at the same level. Wray, who has not returned to work since her accident, sought workers' compensation benefits for her injury.

An Administrative Law Judge ("ALJ") found Wray to be suffering from 50 percent occupational disability. Following medical testimony concerning the loosening effect of pregnancy on the back, the ALJ apportioned liability for 33.33 percent of her disability to Wray's employer. The remaining 16.67 percent was apportioned to the Special Fund because of the arousal of a previously dormant nondisabling condition into a disabling reality. The Workers' Compensation Board affirmed. Claiming that Wray's pregnancy-related back condition did not constitute a

dormant nondisabling condition within the meaning of Ky.Rev.Stat. (KRS) 342.120 and that apportionment of liability against the Special Fund was inappropriate, the Special Fund appeals. Wray has filed a cross-petition requesting that her employer be held liable for the entire award if we find error in the apportionment of liability against the Special Fund.

The sole issue before us is whether the Board erred in affirming the apportionment of liability against the Special Fund pursuant to KRS 342.120(2)(b). To answer this question, we must decide whether the loosening effect of pregnancy on a woman's back constitutes "a dormant nondisabling disease or condition" within the meaning of KRS 342.120(2)(b). We hold that it does not.

The Special Fund, a Division of the Labor Cabinet, was created to relieve employers of liability for the proportion of disability that is not the result of a work-related injury or disease. *See A & K Coal Co. v. Blankenship,* Ky., 708 S.W.2d 638 (1986); *see also* Arthur Larson, *Workmen's Compensation for Occupational Injuries and Death* § 59.31 (1995). KRS 342.120(2), which provides for apportionment of compensation liability between employers and the Special Fund, states:

A claimant may name the special fund as a party in the original application for benefits, or either party shall as soon as practicable, by motion, unless there is a showing of good cause, request the administrative law judge to and the administrative law judge shall, cause the special fund to be made a party to the proceedings if either or both of the following appears:

(a) The employee is disabled, whether from a compensable injury, occupational disease, pre-existing disease, or otherwise, and has received a subsequent compensable injury by accident, or has developed an occupational disease;

(b) *The employee is found to have a dormant non-disabling disease or condition which was aroused or brought into disabling reality by reason of a subsequent compensable inju-*

*ry by accident or an occupational disease.* (Emphasis supplied.)

The purpose of the apportionment statute is "to encourage the employment of persons having health problems which could affect the degree of disability in the event of subsequent injury." *Yocom v. Jackson,* Ky.App., 554 S.W.2d 891, 896 (1977). *See also Kentucky Mountain Coal Co.,* Ky., 358 S.W.2d 517, 518 (1962).

While we have not considered the application of KRS 342.120 to the effects of pregnancy before, Kentucky courts have addressed the meaning of the phrase "dormant nondisabling disease or condition" found in KRS 342.120(2). *See generally Newberg v. Armour Food Co.,* Ky., 834 S.W.2d 172 (1992) (holding that a predisposition, in and of itself, is not a dormant, nondisabling condition); *Yocom v. Tri–County San. Serv., Inc.,* Ky., 522 S.W.2d 850 (1975) (holding that a low-threshold emotional breaking point is not a disease condition within meaning of statute); *Yocom v. Fayard,* Ky., 515 S.W.2d 614 (1974) (holding that a dormant, nondisabling degenerative disc in itself is not a disease condition for which the Special Fund is liable); *Kentucky Convalescent Home v. Henry,* Ky., 463 S.W.2d 328 (1971) (holding that obesity is not a dormant, nondisabling condition even if it compounded injury and delayed recovery); *Young v. Monroe,* Ky., 466 S.W.2d 452 (1971) (holding that spondylolisthesis, involving the displacement of one vertebra over another, is not a disease condition within meaning of statute); *Young v. South–East Coal Co.,* Ky., 468 S.W.2d 316 (1971) (holding that hypertrophic or osteoarthritic lipping resulting from the aging process is not a disease for which the Special Fund is liable); *Young v. Bartley,* Ky., 472 S.W.2d 262 (1971) (holding that degenerative arthritis is not a dormant, nondisabling disease or condition within statute); *Dealers Transp. Co. v. Thompson,* Ky. App., 593 S.W.2d 84 (1979) (holding that the General Assembly did not intend a cold or similar viral infection to be within the meaning of the statute because the potential for occupational disability is not reasonably foreseeable); *Armco Steel Corp. v. Lyons,* Ky. App., 561 S.W.2d 676 (1978) (holding that a person who knows that he has a disease condition and is being medically treated for

the condition does not have a dormant, non-disabling disease condition); *Yocom v. Jackson, supra*, (interpreting KRS 342.120(2)(b)). In *Yocom v. Jackson*, 554 S.W.2d at 896, this Court held that "a dormant nondisabling condition within the scope of KRS 342.120 must be a condition which constitutes a 'departure from the normal state of health.'" We further explained:

> [N]ot every departure from the normal state of health constitutes a dormant condition within the meaning of the statute. Considering the purpose of funds such as the Special Fund, this court concludes that it must be reasonably foreseeable that the abnormality may become disabling to some degree as a result of the ordinary stresses of everyday life over the employee's expected work life before it can be considered a dormant condition within the meaning of KRS 342.120 . . . .
>
> . . . It was not the intention of the legislature to relieve employers from the natural consequences of their employees' work related injuries merely because the degree of disability was affected by some physical or mental characteristic which ordinarily would never have affected the employees' ability to work.

*Id.* at 896, 897. Citing *Yocom v. Jackson*, the Supreme Court of Kentucky has also held that "a predisposition, in and of itself, [does not constitute] a dormant, nondisabling condition for the purposes of KRS 342.120(2)(b)." *Newberg v. Armour Food Co.*, 834 S.W.2d at 175. The Supreme Court continued:

> Where there is evidence of . . . a predisposition, we believe that it is more appropriate to consider the underlying medical condition which caused the predisposition to determine whether or not that condition was a departure from the normal state of health. . . . *Id.*

As Wray points out in her cross-petition, "[w]hen a pre-existing condition [for which the Special Fund is not liable under KRS 342.120] becomes an active disability through the agency of a work-connected injury the employer alone, which takes the [employee] as it finds [her], is liable." *Yocom v. Fayard*, 515 S.W.2d at 615, quoting *Adams & Mulberry Corp. v. Bolston*, Ky., 487 S.W.2d 680 (1972).[1]

The medical testimony in the present case proves only that pregnant women have a predisposition to sustain a back injury if they fall. Dr. Hunter testified that "the body is at a disadvantage during stages of pregnancy. The ligaments are relaxed. The enzymes of the body loosen up the spine and they are more vulnerable to rupturing a disk." The doctor further explained:

> During pregnancy the enzymes and hormones are such that those disks are hydrated, they are full of a large volume of water. That sets them up to burst easily . . . .
>
> [W]hen one falls in pregnancy, . . . the bones are not held together as well. The body is preparing to loosen up to let this baby come through the birth canal. And the way it does it is by stretching things. And to stretch things you've got to have loose ligaments. And so the back is set up to get hurt.

As the Supreme Court held in *Newberg v. Armour Food Co.*, 834 S.W.2d at 175, such a predisposition does not constitute a condition for which the Special Fund is liable. It is undisputed that the underlying medical condition causing this predisposition is the temporary and natural state of pregnancy. We are unwilling to say that pregnancy constitutes a departure from the normal state of health of a woman because it is not reasonably foreseeable that a normal pregnancy will become "disabling to some degree as a result of the ordinary stresses of everyday life." *Yocom v. Jackson*, 554 S.W.2d at 896. As this Court said in *Yocom v. Jackson*, "[i]t was not the intention of the legislature to relieve employers from the natural consequences of their employees' work related injuries merely because the degree of disability was affected by some physical or mental characteristic which ordinarily would never

---

1. None of the parties challenge the ALJ's finding that Wray is 50 percent occupationally disabled. Accordingly, Wray is entitled to the full amount of the award. The only issue before us is who is liable for the award.

have affected the employees' ability to work." *Id.* at 897.

There was no testimony in this case that the loosening of Wray's back interfered with her ability to work. Wray would not have injured her back had she not fallen. The fact that Wray's pregnancy-related condition "may well [have produced] more disability than the same injury would cause in [an employee that was not pregnant]" and may have delayed her recovery does not bring the condition within the meaning of KRS 342.120(2)(b). *Kentucky Convalescent Home,* 463 S.W.2d at 331.

The opinion of the Board is reversed and this case is remanded to the Board with instructions to correct the award accordingly.

EMBERTON, J., concurs.

GUDGEL, J., dissents without separate opinion.